# 22-624

_____

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE SECOND CIRCUIT

_____

DR. LUCILLE LEVIN, SUZELLE M. SMITH, as Trustee of the Jeremy Isadore Levin 2012 Revocable Trust, as amended,

Plaintiffs – Third-Party-Defendants – Cross-Defendants – Appellants,

*(See Inside Cover for Continuation of Caption)*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

**OPENING BRIEF OF DR. LUCILLE LEVIN AND SUZELLE M. SMITH, AS TRUSTEE OF THE JEREMY ISADORE LEVIN 2012 REVOCABLE TRUST, AS AMENDED**

_____

Suzelle M. Smith
Don Howarth
HOWARTH & SMITH
523 West Sixth Street, Suite 728
Los Angeles, California
(213) 955-9400

*Attorneys for Levin Appellants*

JEREMY LEVIN,

     Plaintiff,

THE BANK OF NEW YORK MELLON,

     Third-Party-Plaintiff-Counter-Defendant,

v.

BANK OF NEW YORK, SOCIETE GENERALE CORPORATE &
INVESTMENT BANKING, BNP PARIBAS, COMMERZBANK AG, JOHN
BECKER, THE ESTATE OF ANTHONY BROWN, JOHN R. CUDDLEBACK,
KATHY HODGES, RICHARD H. MENKINS, (BROTHER) RICHARD
SCHNORF, (FATHER) ROBERT SCHNORF, JP MORGAN CHASE,
JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE & CO., AHME
BUYUK, JPMORGAN CHASE BANK, N.A./LONDON,

     Defendants-Third-Party-Plaintiffs-Counter-Defendants-Appellees,

CITIBANK,

     Defendant-Third-Party-Plaintiff-Counter-Defendant-Third-Party-
    Defendant-Cross-Defendant-Appellee,

JENNY RUBIN, DEBORAH RUBIN, NORMAN RUBIN, ABRAHAM
MENDELSON, STUART E. HERSH, RENAY FRYM,

     Third-Party-Defendants-Cross-Defendants-Consolidated-Third-Party-
    Defendants,

REDACTED THIRD-PARTY DEFENDANT, TERRANCE VALORE,
CATHRINE BONK HUNT, JOHN BONK, SR., KEVIN BONK, THOMAS
BONK, LISA DIGIOVANNI, MARION DI GIOVANNI, ROBERT
DIGIOVANNI, DANIELLE DIGIOVANNI, SHERRY LYNN FIEDLER,
ROBERT FLUEGEL, THOMAS A. FLUEGEL, MARILOU FLUEGEL, EVANS
HAIRSTON, FELICIA HAIRSTON, JULIA BELL HAIRSTON, HENRY
HUKILL, MARK ANDREW HUKILL, MATTHEW SCOTT HUKILL,
MELISSA HUKILL, MEREDITH ANN HUKILL, MITCHELL CHARLES
HUKILL, MONTE HUKILL, VIRGINIA ELLEN HUKILL, STORM JONES,

PENNI JOYCE, CARL KIRKWOOD, SR., JEFF KIRKWOOD, SHIRLEY
KIRKWOOD, CARL A. KIRKWOOD, PATRICIA KRONENBITTER, JAMES
MACGROGLOU, LORRAINE MACGROGLOU, BILL MACGROUGLOU,
BETTY LAISE, KATHY MCDONALD, EDWARD W. MCDONOUGH, SEAN
MCDONOUGH, EDWARD J. MCDONOUGH, ROSE ROTONDO, ESTATE
OF, LUIS ROTONDO, PHYLLIS SANTOSERRA, DEBORAH RHOSTO,
ROBERT SIMPSON, RENEE EILEEN SIMPSON, LARRY SIMPSON, SR.
ANNE MARIE SIMPSON, SALLY JO WIRICK, JUANITA R. GOLDFARB,
DAVID A. BATTLE, ESTATE OF, MARY V. HERNANDEZ, MATILDE
HERNANDEZ, ESTATE OF, ROBERT MIFFLER, JR. JOHN MUFFLER,
ESTATE OF, JUTTA YARBER, JAMES YARBER, ESTATE OF, RONALD I.
TISHMACK, JOHN JAY TISHMACK, ESTATE OF, DOROTHY WINT, CELIA
WALKER, DOROTHY C. WINT PEDRO ALVARADO, JR. ANDRES
ALVARADO TULL, ANGEL ALVARADO, GERALDO ALVARADO
GRISSELLE ALVARADO, LUIS ALVARADO, LUISA ALVARADO, MARIA
ALVARADO, MARTA ALVARADO, MINERVA ALVARADO, YOLANDO
ALVARADO, ZORAIDA ALVARADO, DENNIS LACK ANDERSON, FLOYD
MARTIN CARPENTER, MICHAEL HARRIS, ROSE HARRIS, DONALD R.
PONTILLO, DEBORAH TRUE, DOUGLAS PONTILLO, LEONORA
PONTILLO, JOHN E. SELBE, ELOISE F. SELBE, BELINDA SKARKA, DON
SELBE, JAMES SELBE, WILLY G. THOMPSON, ALLISON THOMPSON,
IFALINE THOMPSON, CHERYL BASS, JOHNNY THOMPSON, WANDA
FORD, ORLANDO MICHAEL VALORE, SR., ORLANDO M. VALORE, JR.,
JANICE VALORE, MARCY LYNN PARSON, TIMOTHY BROOKS,
EDWARD J. BROOKS, PATRICIA A. BROOKS, ESTATE OF MICHAEL
HEISER, FRANCIS HEISER, GARY HEISER, HERMAN C. MARTHALER, III,
KATIE L. MARTHALER, SHARON MARTHALER, KIRK MARTHALER,
KATHLEEN M. WOOD, RICHARD M. WOOD, ANTHONY W. CARTRETTE,
DENISE M. EICHSTAEDT, LEWIS W. CARTRETTE, ESTATE OF PATRICK
FENNIG, CATHERINE FENNIG, INDIVIDUALLY AND AS PERSONAL,
REPRESENTATIVE, OF THE ESTATE OF PATRICK FENING, MARK
FENNIG, PAUL D. FENNIG, ESTATE OF CHRISTOPHER ADAMS,
CATHERINE ADAMS, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER ADAMS, MARY
YOUNG, DANIEL ADAMS, ELIZABETH WOLF, PATRICK ADAMS, JOHN
ADAMS, WILLIAM ADAMS, MICHAEL ADAMS, ESTATE OF THANH GUS
NGUYEN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF THANH GUS NGUYEN, SANDRA M. WETMORE,
BRIDGET BROOKS, JAMES RIMKUS, ANNE RIMKUS, ESTATE OF
KENDALL KITSON, JR., KENDALL KITSON SR., INDIVIDUALLY AND AS

PERSONAL REPRESENTATIVE, OF THE ESTATE IF KENDALL KITSON,
NANCY R. KITSON, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF KENDALL KITSON JR., STEVEN
K. KITSON, NANCY A. KITSON, LAWRENCE TAYLOR, STARLINA
TAYLOR, ESTATE OF JOSHUA WOODY, DAWN WOODY, BERNADINE R.
BEEKMAN, TRACEY M. SMITH, JONICA L. WOODY, TIMOTHY WOODY,
IBIS "JENNY&QUO HAUN, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF LELAND "TIM" HAUN, ESTATE
OF LELAND TIMOTHY HAUN, SENATOR HAUN, MILLY PEREZ-
DALLIS, ESTATE OF CHRISTOPHER LESTER, CECIL H. LESTER, CECIL
LESTER, JR., JESSICA LESTER, SHYRL JOHNSON, INDIVIDUALLY AND
AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KEVIN JOHNSON,
SR, NICHOLAS JOHNSON, ESTATE OF PETER MORGERA, MICHAEL,
MORGERA, INDIVIDUALLY OF THE, THOMAS MORGERA, ESTATE OF
MILLARD DEE CAMPBELL, MARIE CAMPBELL, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF MILLARD DEE
CAMPBELL, BESSIE CAMPBELL, ESTATE OF JUSTIN WOOD, ESTATE OF
EARL CARTRETTE, JR. ESTATE OF BRIAN MCVEIGH, ESTATE OF
JEREMY TAYLOR, JAMES WETMORE, GEORGE BEEKMAN, CHE G.
COLSON, LAURA JOHNSON, SEALED- THIRD PARTY DEFENDANT, THE
BANK OF TOYKO-MITSUBISHI UFJ, LTD. (LONDON BRANCH), THE
ESTATE OF JAMES SILVIA AND LYNNE MICHOL SPENCER, THE BANK
OF TOKYO-MITSUBISHI UFJ, LTD. (NEW YORK BRANCH), JOSEPH A.
BARILE, ANGELA E. BARILE, MICHAEL BARILE, ANDREA CIARLA, ANN
MARIE MOORE, ANGELA YOAK, VARA BROWN, JOHN BROWN, SULBA
BROWN, ROWEL BROWN, MARVINE MCBRIDE, LAJUANA SMITH,
RODNEY E. BURNS, JEANNIE SCAGGS, EUGENE BURNS, DAVID BURNS,
DANIEL CUDDEBACK, JR., DANIEL CUDDEBACK, SR., BARBARA
CUDDEBACK, ROBERT DEAN, MICHAEL EPISCOPO, RANDY GADDO,
PETER GADDO, GADDO BLATTER, THE ESTATE OF WILLIM R. GAINES,
JR., MICHAEL A. GAINES, CAROLYN SPEARS, WILLIAM R. GAINES, SR.,
EVELYN SUE SPEARS ELLIOT, CAROL WEAVER, THE ESTATE OF
VIRGEL HAMILTON, GLORIA HAMILTON, BRUCE HASTING, MARY
JEAN HODGE, MAYNARD HODGES, LORRETA BROWN, CINDY
HOLMES, SHANA SAUL, DANIEL JOY, SEAN KIRKPATRICK, JOSEPH T.
KREMER, JACQUELINE STAHRR, THE ESTATE OF CHRISTINE KREMER,
THE ESTATE OF THOMAS KREMER, THE ESTATE OF DAVID A. LEWIS,
BETTY LEWIS, JERRY L. LEWIS, SCOTT M. LEWIS, PAUL MARTINEZ,
SR., TERESA GUNTERH, ESTHER MARTINEZ PARKS, ALPHONSO
MARTINEZ, DANIEL MARTINEZ, MICHAEL MARTINEZ, PAUL

MARTINEZ, JR., JOHN OPATOVSKY, STEVEN G. OWEN, ALBERT PAGE, JANET PAGE, JOSEPH PENOSKY, CHRISTIAN R. RAUCH, THE ESTATE OF BURTON WHERLAND, THE ESTATE OF JEFFREY BRUCE OWEN, THE ESTATE OF MICHAEL LEE PAGE, LEONARD PAUL TICE, CHARLES F. WEST, CHARLES H. WEST, RICK WEST, GREGORY WHERLAND, KIMMY WHERLAND, SARAH WHERLAND, SUSANNE YEOMAN, IBIS S. HAUN, ALAN HAYMAN, SHIRLEE HAYMAN, KATHLEEN M. WOOD, , BRIDGET BROOKS, ESTATE OF JOSEPH E. RIMKUS, ESTATE OF KEVIN J. JOHNSON, BRUCE JOHNSON, K.J., A MINOR, , N.A.J, A MINOR, SHYRL L. JOHNSON, MICHAEL T. ADAM, ESTATE OF PETER J. MORGERA, ESTATE OF THANH VAN NGUYE, MARY YOUNG, DONTE AKILI MWAIPAPE, DONTI AKILI MWAIPAPE, DEBORA DONTI MWAIPAPE, ELISHA DONTI MWAIPAPE, NKO DONTI MWAIPAPE, VICTORIA DONTI MWAIPAPE, JUDY LESTER, LAWRENCE TAYLOR, STARLINA D. TAYLOR, VICKI L. TAYLOR, MONICA AKILI, ESTATE OF ABDU YUSUPH SHAMTE DNANGE, ESTATE OF ABDUL SHABANI MTUYLA, ESTATE OF JUMA YUSUPH SHAMTE DNANGE, ESTATE OF MTENDEJE RAJABU, ESTATE OF MWAJABU YUSUPH SHAMTE DNANGE, ESTATE OF ROGATH SAIDI SAIDI, ESTATE OF SAIDI SHABANI MTUYLA, ESTATE OF YUSUF SHAMTE NDANGE, ANGELINA MATHEW FELIX, ABELLA VALENTINE KATUNDA, DEISERY VALENTINE MATHE KATUNDA, DIANA VALENTINE KATUNDA, EDWINE VALENTINE MATHE KATUNDA, VALENTINE MATHEW KATUNDA, VEIDIANA VALENTINE KATUNDA, VENANT VALENTINE MATHE KATUNDA, CECILIA SAMUEL MARCUS, CORONELLA SAMUEL MARCUS, SAMUAL THOMAS MARCUS, ANGELINA MATHEW-FERIX, SHABANI SAIDI MTULYA, AKILI MUSUPAPE, ALLI KINDAMBA NG'OMBE, ADABETH SAID NANG'OKO, HANUNI RAMADHANI NDANGE, MOHAMED ALLI NG'OMBE, KINDAMBA ALLI NG'OMBE, EDWARD MATHEW RUAHESHELWA, ANGELINA MATHEW RUTAHESHELWA, ELISABETH MATHEW RUTAHESHELWA, ENOC MATHEW RUTAHESHELWA, ERIC MATHEW RUTAHESHELWA, HAPPINESS MATHEW RUTAHESHELWA, EILEEN PRINDEVILLE AHLQUIST, MIRALDA, (JUDITH MAITLAN ALARCON, MARVIN ALBRIGHT, JARNAAL MUATA ALI, ANNE ALLMAN, DIANNE MARGARET ALLMAN, JOHN ROBERT ALLMAN, MARGARET E. ALVAREZ, MARGARET ANGELONI, KIMBERLY F. ANGUS, JESUS ARROYO, MILAGROS ARROYO, PABLO ARROYO, ANTHONY BANKS, DONNIE BATES, ESTATE OF AISHA MAWAZO, ESTATE OF DANIEL ROGATH SAIDI, ESTATE OF DOTIO RMADHANI, ESTATE OF IDIFONCE ROGATH SAIDI, ESTATE OF JOHN ROGATH

SAIDI, ESTATE OF MAJALIWA RAMADHANI, ESTATE OF RENEMA
RAMADHANI, ESTATE OF SELINA ROGATH SAIDI, ESTATE OF UPEMDO
RAMADHANI, ESTATE OF VERONICA ALOIS SAIDI, ESTATE OF WENGO
RAMADHANI, KULWA RAMADHANI, JOHNNY BATES, LAURA BATES,
MARGIE BATES, MONTY BATES, RONNY KENT BATES, THOMAS C.
BATES, SR., MARY E. BAUMGARTNER, ANTHONY BAYNARD, BARRY
BAYNARD, EMERSON BAYNARD, JAMES BAYNARD, PHILIP BAYNARD,
STEPHEN BAYNARD, THOMASINE BAYNARD, TIMOTHY BAYNARD,
WAYNE BAYNARD, JESS W. BEAMON, ANNA BEARD, MARY ANN
BECK, ALUE BELRNER, ALVIN BURTON BELRNER, ANNETTE
BELRNER, CLARENCE BELRNER, COLBY KEITH BELRNER, DONNA
BELRNER, FAYE BELRNER, KENNETH BELRNER, LUDDIE BELRNER,
SHAWN BIELLOW, MARY FRANCIS BLACK, DONALD BLANKENSHIP,
SR., MARY BLANKENSHIP, (ESTATE OF), RICHARD D. BLANKENSHIP,
ALICE BLOCKER, DOUGLAS BLOCKER, JOHN R. BLOCKER, ROBERT
BLOCKER, JOSEPH BOCCIA, JOSEPH J. BOCCIA, SR., RAYMOND
BOCCIA, JOHN, JR., RICHARD BOCCIA, RONNIE BOCCIA, (VERONICA),
LETICIA BODDIE, ANGELA BOHANNON, ANTHONY BOHANNON,
CARRIE BOHANNON, DAVID BOHANNON, EDNA BOHANNON, LEON
BOHANNON, RICKI BOHANNON, LEON BOHANNON, JOHN BONK, JR.,
JEFFREY JOSEPH BOULOS, JOSEPH BOULOS, LYDIA BOULOS, MARIE
BOULOS, REBECCA BOWLER, JOHN NORMAN BOYETT, LAVON
BOYETT, JOHN NORMAN BOYETT, (ESTATE OF), THERESA U. ROTH
BOYETT, WILLIAM A. BOYETT, SUSAN SCHNORF BREEDEN, DAMION
BRISCOE, CHRISTINE BROWN, ROSANNE BRUNETTE, MARY LYNN
BUCKNER, CLAUDE BURLEY, MYRA BURLEY, WILLIAM BURLEY,
WILLIAM DOUGLAS BURLEY, RODNEY DARRELL BURNETTE, (ESTATE
OF), KATHLEEN CALABRO, RACHEL CALDERA, AVENELL CALLAHAN,
MICHAEL CALLAHAN, PAUL CALLAHAN, PATRICIA CALLOWAY,
(PATSY ANN), ELISA ROCK CAMARA, CANDACE CAMPBELL, BRADLEY
CAMPUS, CLARE CAMPUS, ELAINE CAPOBIANCO, OLYMPIA
CARLETTA, KIMBERLY CARPENTER, FLORENE MARTIN CARTER,
PHYLLIS A. CASH, THERESA CATANO, BRUCE CEASAR, FRANKLIN
CEASAR, FREDRICK CEASAR, JOHNNIE CEASAR, ROBBIE NEIL
CEASAR, SYBIL CEASAR, CHRISTINE DEVLIN CECCA, TAMMY
CHAPMAN, JAMES CHERRY, SONIA CHERRY, ADELE H. CHIOS, JANA
M. CHRISTIAN, SHARON ROSE CHRISTIAN, SUSAN CIUPASKA,
LESHUNE STOKES CLARK, ROSEMARY CLARK, MARY ANN COBBLE,
KAREN SHIPP COLLARD, JENNIFER COLLIER, DEBORAH M.
COLTRANE, CHRISTOPHER COMES, FRANK COMES, SR., FRANK

COMES, JR., JOAN COMES, PATRICK COMES, JAMES N. JR CONLEY,
ROBERT ALLEN CONLEY, ROBERTA LI CONLEY, CHARLES F. COOK,
CHARLES DENNIS COOK, ELIZABETH A. COOK, MARY A. COOK, ALAN
TRACY COPELAND, (ESTATE OF), BETTY COPELAND, DONALD
COPELAND, JOHNNY LEN COPELAND, BLANCHE CORRY, DAVID
COSNER, HAROLD COSNER, JEFFREY COSNER, LEANNA COSNER,
MARVA LYNN COSNER, CHERYL COSSABOOM, (ESTATE OF), BRYAN
THOMAS COULMAN, DENNIS P. COULMAN, CHRISTOPHER J.
COULMAN, KEVIN COULMAN, LORRAINE M. COULMAN, TIMOTHY
GADDO, DANIEL KREMER, TOMASITA L. MARTINEZ, JOYCE CLIFFORD,
DAVID PENOSKY, SHARON DAVIS, ALAN C. ANDERSON, MICHAEL
ANDERSON, THELMA ANDERSON, STEPHEN BOYD BLAND, ESTATE OF
FRANK BLAND, RUTH ANN BLAND, JAMES BLAND, ESTATE OF LAURA
VIRGINA COPELAND, SIDNEY DECKEY, IDA DECKER, DUDLEY
DECKER, JOHNNIE DECKER, CAROLYN MUDD, RONALD DUPLANITY,
ESTATE OF SEAN F. ESTER, LOUIS ESTLER, JR., MARY ELLEN ESTLER,
ESTATE OF BENJAMIN E. FULLER, ELLAINE ALLEN, ERNEST C.
FULLER, JOHN GIBSON, HOLLY GIBSON, MAURICE GIBSON, ESTATE
OF MICHAEL HASTINGS, JOYCE HASTINGS, ESTATE OF PAUL HEIN,
CHRISTOPHER HEIN, JO ANN HEIN, KAREN HEIN-SULLIVAN, VICTOR J.
HEIN, JACQUELINE M. KUNYSZ, ESTATE OF JOHN HENDRICKSON,
JOHN HENDRICKSON, TYSON HENDRICKSON, DEBORAH RYAN,
ESTATE OF BRUCE HOLLINGSHEAD, TYSON HENDRICKSON,
MELINDA HOLLINGSHEAD, RENARD MANLEY, ESTATE OF MICHAEL
ROBERT MASSMAN, NICOLE GOMEZ, ANGELA MASSMAN,
KRISTOPHER MASSMAN, LYDIA MASSMAN, PATRICIA LOU SMITH,
ESTATE OF LOUIS MELENDEZ ZAIDA MELENDEZ, DOUGLAS JASON
MELENDEZ, JOHNNY MELENDEZ, JOHNNY MELENDEZ, JR., ESTATE OF
MICHAEL MERCER, SARAH MERCER, SAMUEL PALMER, ROBIN
NICELY, ESTATE OF JUAN C. RODRIGUEZ, LOUISA PUNONET, ROBERT
RUCKER, ESTATE OF BILLY SAN PEDRO, CESAR SAN PEDRO, SILA V.
SAN PEDRO, GUILLERMO SAN PEDRO, JAVIER SAN PEDRO,
THURNELL SHIELDS, EMANUEL SIMMONS, ESTATE OF JAMES SURCH,
PATTY BARNETT, WILL SURCH, BRADLEY ULICK, JEANETTE
DOUGHERTY, MARILYN PETERSON, ESTATE OF ERIC WALKER, TENA
WALKER-JONES, RONALD E. WALKER, GALEN WEBER, ESTATE OF
OBRIAN WEEKES, ANSON EDMOND, ARNOLD EDMOND, ARNOLD
EDMON, HAZEL EDMOND, WENDY EDMOND, FAITH WEEKES, KEITH
WEEKES, IANTHE WEEKES, META WEEKES, ESTATE OF DENNIS
LLOYD WEST, KATHY WEST, ESTATE OF JOHN WEYL, KELLY

BACHLOR, ROBIN BROCK,  MORGAN BROCK, MORGAN W. ROWAN,
SHARON J. ROWAN, NELSON WEYL, THE INTERNATIONAL BANK OF
AZERBAIJAN-MOSCOW LLC, CARLOS ACOSTA, MARIA ACOSTA, TOVA
ETTINGER, IRVING FRANKLIN, BARUCH KAHANE, LIBBY KAHANE,
CIPORAH KAPLAN, STEVEN M. GREENBAUM, CATHERINE BONK,
ESTATE OF, SANDRA GOFF, GARY ROBERT OWENS, JAMES OWENS,
BARK F. PRESSLEY, DAVID A. PRESSLEY, MICHAEL F. PRESSLEY,
THOMAS C. PRESSLEY, YASEMIN B. PRESSLEY, FRANK B. PRESSLEY,
JR., MONTINE BOWEN, SERPI BUYUK, SUNDUS BUYUK, TULAY
BUYUK, BAHAR BUYUK, FRANK PRESSLEY, SR. JOHN B. PRESSLEY,
MARC Y. PRESSLEY, DOROTHY WILLARD, CHERYL L. BLOOD,
TABITHA CARTER, ALEXANDRA RAIN COMIER, ANDREW JOHN
WILLIAM COMIER, ANDREW JOHN WILLIAM COMIER, MICHAEL
JAMES CORMIER, PATRICIA K. FAST, PATRICIA FEORE, LORIE GULIK,
ALICE M. HIRM, CLYDE M. HIRN, INEZ P. HIRN, JULITA A. QUALICO,
JOYCE REED, WHORLEY LEE REED, HOWARD SPARKS, HOWARD
SPARKS JR., LESLIE LYDIA SPARKS, MICHAEL RAY SPARKS, GARY O.
SPIERS, VICTORIA Q. SPIERS, VICTORIA J. SPIERS, FLOSSIE VARNEY,
LINDA JANE WHITESIDE, RITH ANN WHITESIDE, PAT WILLIAMS,
NOAM ROSENMAN, ELENA ROZENMAN, TZVI ROZENMAN, BENNIE
HARRIS, ESTATE OF BINYAMIM KAHANE, ESTATE OF IRMA
FRANKLIN, ESTATE OF MEIR KAHANE, KEITH ESTLER, ETHEL J.
GRIFFIN, SONIA KAHANE, RONALS WALKER JR. JAMES S. SPEARS,
MARK, SPEARS, ESTATE OF MOSES ARNOLD, JR., LOLITA M. ARNOLD,
ESTATE OF DAVID L. BATTLE, LISA ANN BECK, BETTY J. BOLEN,
KEITH EDWIN BOLEN, NEALE SCOTT BOLEN, SHELDON H. BOLEN,
SHARLA M. KORZ, ESTATE OF LEONARD WARREN WALKER, ESTATE
OF WALTER EMERSON WINT, JR. JEAN GIVEN OWEN, DONTE AKILI
MWAIPAPE, ELISHA DONTI MWAIPAPE, NKO DONTI MWAIPAPE,
VICTORIA DONTI MWAIPAPE, DONALD BLANKENSHIP, JR., JOHN W.
BLOCKER, JAMES BOCCIA, BILLIE JEAN BOLINGER, CHARLITA
MARTIN COVINGTON, DEBORAH CRAWFORS, AMANDA CROUCH,
MARIE CRUDALE, RICK CRUDALE, EUGENE F. CYZICK, RUSSELL
CYZICK, LYNN DALLACHIE, BARBARA DAVIS, ANN DEAL, LYNN
SMITH DERBYSHIRE, DESJARDINS, CHRISTINE DEVLIN, DANIEL
DEVLIN, GABRIELLE DEVLIN, MICHAEL DEVLIN, RICHARD DEVLIN,
SEAN DEVLIN, GLENN DOLPHIN, ROSALIE MILANO DONAHUE,
ASHLEY DORAY, NATHANIEL DORSEY, REBECCA DOSS, CLAUDINE
DUNNIGAN, ELIZABETH ANN DUNNIGAN, RICHARD W. WOOD,
ESTATE OF BRENT MARTHALER, MARIE R. CAMPBELL, ELIZABETH

ADAMS, CHRISTOPHER R. NGUYEN, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF THANH GUS
NGUYEN,

       Third-Party-Defendants-Counter-Claimants-Cross-Defendants-Cross-
Claimants,

DEBORAH PETERSON, PERSONAL REPRESENTATIVE OF THE ESTATE
OF JAMES C. KNIPPLE, ET AL.

       Third-Party-Defendant-Counter-Claimant.

# **TABLE OF CONTENTS**

Table of Authorities ................................................................ iii

Jurisdictional Statement ...........................................................1

Statement of the Case ..............................................................1

I.     NATURE OF THE ACTION AND PROCEDURAL HISTORY ..................1

II.    RESULT BELOW ..............................................................5

Summary of Argument..............................................................5

Argument..............................................................................6

I.    STANDARD OF REVIEW ....................................................6

II.    MOTION TO DISMISS ON THE PLEADINGS .........................7

III.   THE DISTRICT COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE FSIA, INCLUDING TRIA § 201(a), DOES NOT PERMIT EXECUTION AGAINST OFFICE OF FOREIGN ASSET CONTROL ("OFAC") BLOCKED ASSETS HELD IN FOREIGN BRANCHES OF UNITED STATES BANKS ..........................................................8

    A.    The District Court Erred in Its Restrictive Interpretation of Blocked Assets Under TRIA ..............................................................8

    B.    In Interpreting TRIA, the District Court Improperly Ignored TRIA's Express Notwithstanding Language and Its References to the Power of the Executive Branch to Define Blocked Assets to Include those

i

Outside the United States in Branches of American Banks,

Notwithstanding Any Other Law and Judicial Presumptions .............11

    (1)    Congressional Intent in the Context of TRIA and TRIA's

           References to Assets Blocked by OFAC Outside the United

           States ..........................................................................................15

IV.    FRCP 69 AND NEW YORK STATE LAW AUTHORIZE STATE AND

      FEDERAL COURTS TO EXECUTE ON ASSETS HELD IN FOREIGN

      BRANCHES OF UNITED STATES BANKS ............................................26

Conclusion ........................................................................................33

Certificate of Compliance ........................................................................35

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*AP MA Funding, LLC v. Wells Fargo Clearing Servs.*,

    2020 N.Y. Slip Op. 31242 (N.Y. Sup. Ct. May 7, 2020)....................................30

*Aurecchione v Schoolman Transp. System*,

    426 F3d 635 (2d Cir 2005) .....................................................................................8

*Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*,

    499 F.3d 737 (7th Cir. 2007)......................................................... 17, 20

*Bank Markazi v. Peterson*,

    140 S. Ct. 813 (2020) ...........................................................................19

*Bank of New York v. Rubin*,

    484 F.3d 149 (2d Cir. 2007).................................................................24

*Bennett v. Islamic Republic of Iran*,

    825 F.3d 949 (9th Cir. 2016)................................................................14

*Burlington N. & Santa Fe Ry. Co. v. Consol. Fibers, Inc.*,

    7 F. Supp. 2d 822 (N.D. Tex. 1998)....................................................22

*Calderon-Cardona v. Bank of N.Y. Mellon, HSBC*,

    770 F.3d 993 (2d Cir. 2014).................................................................26

*Cisneros v. Alpine Ridge Group*,

    508 U.S. 10 (1993) ...............................................................................13

*Conn. Bank of Com. v. Republic of Congo,*

309 F.3d 240 (5th Cir. 2002)........................................................... 18, 20

*Eitzen Bulk A/S v. Bank of India,*

827 F. Supp. 2d 234 (S.D.N.Y. 2011)...................................................30

*Gomez v. Ashcroft,*

293 F. Supp. 2d 162 (D. Conn. 2003) ..................................................14

*Hegna v. Islamic Republic of Iran,*

380 F.3d 1000 (7th Cir. 2004)...................................................... 18, 20

*Hill v. Republic of Iraq,*

No. CIV.A. 1:99CV03346TP, 2003 WL 21057173 (D.D.C. Mar. 11, 2003) .....13

*In re Feit & Drexler, Inc.,*

760 F.2d 406 (2d Cir. 1985) ..............................................................31

*JW Oilfield Equip., LLC v. Commerzbank, AG,*

764 F. Supp. 2d 587 (S.D.N.Y. 2011)...................................................31

*Koehler v. Bank of Bermuda Ltd.,*

12 N.Y.3d 533 (2009) ............................................................ 19, 28, 29

*Koehler v. Bank of Bermuda Ltd.,*

544 F.3d 78 (2d Cir.), certified question accepted, 11 N.Y.3d 801 (2008), and

certified question answered, 12 N.Y.3d 533 (2009) ............................... 28, 29, 32

*Koehler v. Bank of Bermuda Ltd.*,

    577 F.3d 497 (2d Cir. 2009) ................................................................... 19, 29, 32

*Levin v. Bank of N.Y. Mellon*,

    09 CV 5900 RPP, 2013 WL 5312502 (S.D.N.Y. Sept. 23, 2013) ......................25

*Levin v. Bank of New York*,

    No. 09 CV 5900 RPP., 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) ................2, 3

*Levin v. Islamic Republic of Iran*,

    No. CV 05-2494 (GK/JMF), 2007 WL 9759002 (D.D.C. Dec. 31, 2007) ...........2

*Mississippi v. AU Optronics Corp.*,

    134 S.Ct. 73 (2014) ........................................................................................33

*Morrison v. Nat'l Austl. Bank Ltd.*,

    561 U.S. 247 (2010) ........................................................................................16

*Peterson v. Islamic Republic of Iran*,

    963 F.3d 192 (2d Cir. 2020) ............................................................................19

*Republic of Argentina v. NML Capital, Ltd.*,

    573 U.S. 134 (2014) ................................................................................ *passim*

*Rubin v Islamic Republic of Iran*,

    138 S. Ct. 816 (2018) ............................................................................... 11, 12

*Sajous v. Decker*,

    No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018) .............20

*Schneider v. United States*,

    27 F.3d 1327 (8th Cir. 1994)...............................................................14

*Silverman v. Miranda*,

    213 F. Supp. 3d 519 (S.D.N.Y. 2016)...................................................19

*Slaven v BP America, Inc.*,

    786 F Supp 853 (C.D. Cal. 1992)..........................................................12

*Smith v. Fed. Rsrv. Bank of New York*,

    280 F. Supp. 2d 314 (S.D.N.Y.)...........................................................32

*United Nat'l Ins. Co. v. Waterfront N.Y. Realty, Corp.*,

    948 F. Supp. 263 (S.D.N.Y. 1996)........................................................19

*United States v. Alavi Found. (In re 650 Fifth Ave. & Related Props.)*,

    830 F.3d 66 (2d Cir. 2016)......................................................................9

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*,

    982 F. Supp. 2d 830 (N.D. Ill. 2013) ...................................................13

*United States v. Bedi*,

    15 F.4th 222 (2d Cir. 2021).....................................................................7

*United States v. First Nat'l City Bank*,

    379 U.S. 378 (1965) .............................................................................31

*United States v. Gonzales*,

    520 U.S. 1 (1997) .................................................................................33

*Walters v. Industrial and Commercial Bank of China*,

    651 F.3d 280 (2d Cir. 2011)................................................................ 6, 17, 20, 29

*Weinstein v. Islamic Republic of Iran*,

    609 F.3d 43 (2d Cir. 2010)....................................................................................9


**<u>Statutes</u>**

17 C.F.R. 240.10b-5..............................................................................................16

28 U.S.C. § 1610(g) ..............................................................................................33

31 C.F.R. § 544.201(a)..........................................................................................23

31 C.F.R. § 594.201(a)..........................................................................................23

31 C.F.R. § 594.310 ..............................................................................................23

50 U.S.C. §§ 1701-1702 .......................................................................................24

Foreign Sovereign Immunities Act of 1976,

    28 U.S.C. § 1610(f)(1)(A)................................................................................26

National Defense Authorization Act for Fiscal Year 2020,

    Pub.L. 116–92, 133 Stat. 1198 *et seq.* (2019).................................................18

Terrorism Risk Insurance Act of 2002,

    Pub. L. No. 107-297, 116 Stat. 2322 (2002), § 201 codified at

    28 U.S.C. § 1610 ............................................................................... 6, 23, 26, 33

## <u>Other Authorities</u>

Black's Law Dictionary (10th ed. 2014) ................................................................19

**JURISDICTIONAL STATEMENT**

The district court had subject-matter jurisdiction pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, et seq.; the Terrorism Risk Insurance Act, codified at 28 U.S.C. § 1610; 28 U.S.C. § 1331; and 28 U.S.C. § 1605(a)(7).

The district court entered a final order on February 21,2022 granting JPMorgan Chase Bank, N.A.'s and JPMorgan Chase Bank, N.A./London's (together, "JPMorgan") motion to dismiss the Levins' supplemental complaint, over Appellants' opposition [1] and entered final Judgment on February 22, 2022.[2] Appellants timely filed a notice of appeal from the district court's final dismissal order and judgment on March 24, 2022. Dkts. 1-5. Fed. R. App. P. 4(a)(1). This Court has jurisdiction of this case under 28 U.S.C. § 1291.

**STATEMENT OF THE CASE**

## I. NATURE OF THE ACTION AND PROCEDURAL HISTORY

In 1984, CNN Bureau Chief, Jeremy Levin, was kidnapped on his way to the CNN office in Beirut, held hostage, chained, starved, and tortured by his captors for 343 days. With no regard for her personal safety, and without knowing whether her husband was alive or dead, Dr. Lucille Levin traveled to Beirut,

---

[1] Joint Appendix ("JA") at 711-718.
[2] SPA 9.

1

Cyprus, and Syria to campaign for her husband's release by direct confrontation with radical leaders in Beirut, by raising public awareness of the hostage situation, and by engaging foreign administrations while undergoing severe emotional trauma, personal risk, and financial stress. *See Levin v. Islamic Republic of Iran*, No. CV 05-2494 (GK/JMF), 2007 WL 9759002, at *1 (D.D.C. Dec. 31, 2007), report and recommendation adopted, No. CV 05-2494 (GK/JMF), 2008 WL 11493474 (D.D.C. Jan. 14, 2008).  On February 6, 2008, the United States District Court for the District of Columbia entered judgment in the amount of $28,807,719 in compensatory damages, and post judgment interest, against Iran and its agencies and instrumentalities in favor of Mr. Levin and Dr. Levin (collectively "the Levins") under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA").  *Id* at *16. The Levins did not seek or request punitive damages.

On April 20, 2009, the Levins registered their judgment with the United States District Court for the Southern District of New York, and on October 14, 2009, they served their judgment on the Iranian Judgment Debtors through court and diplomatic channels.  *Levin v. Bank of New York*, No. 09 CV 5900 RPP., 2011 WL 812032, at *2 (S.D.N.Y. Mar. 4, 2011).  On June 19, 2009, pursuant to N.Y. C.P.L.R. § 5230 (made applicable here by Fed. R. Civ. P. 69), the Levins served Writs of Execution on the United States Marshal for the Southern District of New York for service on several New York banks including JPMorgan.  *Id*.

The Levins filed their initial Complaint in this action on June 26, 2009, seeking turnover of all assets in which Iran or its agents and instrumentalities have a direct or indirect interest, pursuant to N.Y. C.P.L.R. § 5225 and 28 U.S.C. § 1605(a)(7), the Foreign Sovereign Immunities Act ("FSIA"), which was repealed and replaced by 28 U.S.C. § 1605A in 2008, and § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"). *Id.*

On January 6, 2021, Plaintiffs, Dr. Lucile Levin and successor in interest, Suzelle Smith, Trustee of the Jeremy Isadore Levin 2012 Revocable Trust as Amended ("Appellants"), filed a supplemental complaint against JPMorgan seeking turnover under TRIA of a particular asset of an Iranian terrorist agency, Bank Melli, blocked by JPMorgan in its London Branch, under United States federal anti-terrorist regulations (the "Melli Blocked Account") for collection and partial satisfaction of their judgment against The Islamic Republic of Iran, which had been disclosed by JPMorgan in response to interrogatories served by the Levins on January 29, 2018. *Levin v. Bank of New York*, No. 09 CV 5900 (S.D.N.Y.) ("*Levin II*"), Dkt. 1356. JPMorgan Chase Bank, N.A./London admitted that the district court has personal jurisdiction over it,[3] and that it froze the Melli

---

[3] *See Levin II* Dkt. 1369 at 8.

Blocked Account pursuant to regulations of the Office of Foreign Asset Contract ("OFAC").[4]

On March 4, 2021, JPMorgan filed a motion to dismiss the Appellants' supplemental complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the basis that the district court lacked subject matter jurisdiction and that the supplemental complaint failed to state a claim on which relief can be granted because the Melli Blocked Account is blocked in a branch of a U.S. bank outside of the United States, claiming it is immune to execution under TRIA. *See* JA 67-68; *Levin II* Dkt. 1369. JPMorgan did not dispute: (1) that the funds in the Melli Blocked Account belong to Bank Melli; (2) that Bank Melli is an Iranian bank wholly owned by the Iranian government; (3) that Bank Melli has been held to be an instrumentality of Iran; (4) that the Melli Blocked Account is subject to OFAC regulations; (5) that the district court has personal jurisdiction over JPMorgan Chase, N.A/London for the purpose of the proceedings regarding the Melli Blocked Asset; and (6) that the district court has subject matter jurisdiction over TRIA cases, including this one. *See Levin II* Dkts. 1369, 1374 at 8-9; SPA 2. Rather, JPMorgan asserts, and the district court agreed, that because other sections of the FSIA limit jurisdiction to property physically in the United States, TRIA § 201(a), a part of the FSIA, which does not contain such language, and does contain

---

[4] *See Levin II* Dkt. 1369 at 7.

the express language, "[n]otwithstanding any other provision of law," should also

be so limited, due to principles of judicial construction.  SPA 5-8.

## II.    RESULT BELOW

The District Court entered an Opinion and Order on February 21, 2022, but

dated February 22, 2022, granting with prejudice JPMorgan's motion to dismiss

the Levins' supplemental complaint seeking turnover of the Melli Blocked

Account, held by JPMorgan.  SPA 1-8.  The Clerk's Judgment was entered on

February 22, 2022.  SPA 9.  The District Court held that a general judicial

presumption against extraterritoriality limits the scope of TRIA's collection

authority and that the words "within the United States," should be applied to TRIA

§ 201(a), even though the section does not include them, and other sections of the

FSIA do include such language.  It ruled that assets blocked under the anti-

terrorism laws and regulations of the United States, when held in a foreign branch

of a United States bank, even when the bank is subject to the Court's jurisdiction,

are not under the jurisdiction of the District Court.

## SUMMARY OF ARGUMENT

The District Court erred as a matter of law in applying a restrictive rule of

judicial interpretation to a federal anti-terrorism statute, TRIA.  The District Court

erred in its holding that a judicially created rule of interpretation requires that

Congress must expressly state that the statute dealing with blocked assets of state

5

sponsors of terrorism applies to federally blocked assets in branches of U.S. banks located outside the United States, despite the fact that the statute states specifically that it applies "notwithstanding any other provision of law." The District Court also erred in finding that TRIA is silent as to blocked assets located in branches of U.S. banks located outside the United States. TRIA defines a "blocked asset" as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702)[("IEEPA")]." TRIA § 201(d)(2)(A). The federal regulations implementing these acts specifically include blocked assets located in foreign branches of United States banks, such as JPMorgan Chase Bank, N.A. and its foreign branch, JPMorgan Chase Bank, N.A./London.

## ARGUMENT

## I.  STANDARD OF REVIEW

This Court reviews a District Court's interpretation of the Foreign Sovereign Immunities Act and the Terrorist Risk Insurance Act, which is part of the FSIA, including jurisdiction of the FSIA and TRIA, de novo. *Walters v. Industrial and Commercial Bank of China*, 651 F.3d 280, 286 (2d Cir. 2011) ("We review a district court's legal conclusions under the FSIA de novo."); *United States v. Bedi*,

15 F.4th 222, 226 (2d Cir. 2021) ("The interpretation of a statute is a question of law, which we review de novo.").

## II.    MOTION TO DISMISS ON THE PLEADINGS

As the District Court stated: "Defendants [JPMorgan], garnishees in this action pursuant to New York Civil Practice Law and Rules § 5225(b), now move to dismiss the supplemental complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. Nos. 1368 & 1369.)" SPA 1. "Before the Court is a single question: whether the Melli Blocked Account is immune from execution under the Foreign Sovereign Immunities Act ("FSIA") because it is located outside of the United States." SPA 4. "Defendants' motion to dismiss is granted." SPA 1.

> Where a district court grants a defendant's Rule 12(b)(1) motion to dismiss, an appellate court will review the district court's . . . legal conclusions *de novo. See Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *See id.* at 497. After "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("[I]t is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it "lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113.

*Aurecchione v Schoolman Transp. System*, 426 F3d 635, 638 (2d Cir 2005) (reversing district court's dismissal of complaint for lack of subject matter jurisdiction).

## III. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE FSIA, INCLUDING TRIA § 201(a), DOES NOT PERMIT EXECUTION AGAINST OFFICE OF FOREIGN ASSET CONTROL ("OFAC") BLOCKED ASSETS HELD IN FOREIGN BRANCHES OF UNITED STATES BANKS

### A. The District Court Erred in Its Restrictive Interpretation of Blocked Assets Under TRIA

The district court acknowledged that TRIA allows the Levins to collect their unsatisfied judgment against the Islamic Republic of Iran ("Iran") from blocked assets of Iran and its agencies and instrumentalities and that the language of TRIA, unlike other sections of the FSIA, does not limit the definition of "blocked assets" to those in the United States. The Order of the district court states:

> TRIA § 201(a) provides that:
>
>> "[I]n every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment."

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297 § 201(a) (codified as 28 U.S.C. § 1610 (note)). Unlike most of FSIA § 1610's provisions, which explicitly strip immunity from kinds of property "in the United States," see 28 U.S.C. § 1610, TRIA § 201(a) strips immunity from blocked assets without reference to whether the assets must be in the United States.

SPA 5.[5]

The District Court acknowledged that TRIA expressly states that "blocked assets" are available for execution, without limitation to those in the United States in the language of the statute. *Id.* There is no issue that the Complaint alleges the assets are in fact lawfully blocked pursuant to OFAC regulations and JPMorgan does not contest this point. JA 1-20. There is no issue that Bank Melli is an agent of Iran. *United States v. Alavi Found. (In re 650 Fifth Ave. & Related Props.)*, 830 F.3d 66, 88 (2d Cir. 2016) ("It is undisputed that Bank Melli, a bank owned by the Iranian government, is the 'Government of Iran' under the ITRs."); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 48 (2d Cir. 2010) ("Finally, Bank Melli

---

[5] The district court also states that in their complaint, "Plaintiffs specifically seek to execute against the Melli Blocked Account under FSIA § 1610(g) …." SPA 4. The district court then states that 1610(g) does not remove immunity from the assets of a foreign sovereign on its own, but another section of the FSIA must do so, citing *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 819 (2018). *Id.* The Levins did not rely on 1610(g) alone in pleading the garnishment action against the blocked assets of Iran but always relied on TRIA, consistent with the Supreme Court's opinion in *Rubin*. *Rubin*, 138 S. Ct. at 818; SPA 5. There is also no question that the federal court has personal jurisdiction over defendant, JPMorgan Chase Bank, N.A./London, the holder of the OFAC blocked Iranian assets, and it has so stipulated. *See Levin II* Dkt. 1369 at 8.

9

concedes that it is an instrumentality of Iran.").[6]  However, applying certain judicial rules of statutory interpretation, but not others, the District Court held for the first time, with no direct on point authority in support, that the phrase "blocked assets" under TRIA does not include assets which are in fact blocked by OFAC regulations but are located in a foreign branch of a United States bank.  The Court reached this conclusion on the basis that TRIA does not expressly include the words "outside the United States" in the sentence which refers to blocked assets.  SPA 5.  The District Court found that TRIA was "silent" as to any location requirement for blocked assets.  SPA 5.  The Court erred in its application of the rules of statutory interpretation generally, and specifically so with respect to the FSIA, including TRIA.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6] *See also* SPA 2: "Plaintiffs and Defendants both acknowledge: (1) that the funds in the Melli Blocked Account belong to Bank Melli; (2) that Bank Melli is an Iranian bank wholly owned by the Iranian government; and (3) that Bank Melli has been held to be an instrumentality of Iran.  (*See* Dkt. No. 1369 at 2, 5–6; Dkt. No. 1374 at 1–2.)."

**B.** **In Interpreting TRIA, the District Court Improperly Ignored TRIA's Express Notwithstanding Language and Its References to the Power of the Executive Branch to Define Blocked Assets to Include those Outside the United States in Branches of American Banks, Notwithstanding Any Other Law and Judicial Presumptions**

By its clear language, TRIA not only allows for execution on all blocked assets of a terrorist state, but also to preclude any restriction on such execution, Congress included the express language "notwithstanding any other provision of law" to the statute.  The Supreme Court in *Rubin* specifically calls out the importance of this language or its absence to proper statutory construction of the different sections of the FSIA.

> [T]wo other provisions within [FSIA] §1610 specifically allow §1605A judgment holders to attach and execute against property of a foreign state, "[n]otwithstanding any other provision of law," including those provisions otherwise granting immunity, but only with respect to assets associated with certain regulated and prohibited financial transactions. See §1610(f)(1)(A); Terrorism Risk Insurance Act of 2002 (TRIA), §201(a), 116 Stat. 2337, note following 28 U. S. C. §1610. Section 1610(g) [in contrast to TRIA] conspicuously lacks the textual markers, "shall not be immune" or "notwithstanding any other provision of law," [which TRIA includes] …."

*Rubin v Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018).

11

The District Court, in its interpretation of TRIA, mistakenly ignored this key language used by Congress in drafting the statute.[7] The District Court does not explain why it did not include in its analysis of statutory construction the "notwithstanding" language of TRIA and how such language impacts rules of judicial construction of a statute containing this language. *See generally* SPA 1-8.

It is clear that a court interpreting a statute must address this language and acknowledge that judicial presumptions cannot override legislation. When Congress uses "notwithstanding any other provision of law" language, it is to be interpreted on the understanding that Congress means what it says. *See, e.g.*, *Slaven v BP America, Inc.*, 786 F Supp 853, 858 (C.D. Cal. 1992) ("The objection has been made, though, that the statute does not really speak directly to the *Robins* [federal common law] question. It is argued that Congress was aware of the *Robins* rule and was purposely silent on the issue. It is argued that in saying 'notwithstanding the provisions of any law' Congress was referring only to

---

[7] This is particularly odd because the District Court asked for additional letter briefing as to the impact of Rubin on the issues in this case. JA 698. The parties provided additional briefing as requested. JA 699-708. Defendants also went beyond the requested briefing as to *Rubin*. JA 704-708. The Levins requested the right to file a short rebuttal letter to the other arguments raised by Defendants, but the District Court did not respond to the request, other than to enter its Order. JA 709-710. As *Rubin* deals with jurisdiction under 1610(g), where TRIA is not also alleged as a basis for jurisdiction, the holding is not directly on point, but the reasoning of *Rubin* contrasting 1610(g) and TRIA, entirely supports the Levins' position on jurisdiction and undermines the holding of the District Court. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).

statutory law. If Congress had intended to overrule judge made law as well, the argument goes, it would have used the phrase 'notwithstanding any other provision or *rule of law.*' *Compare* 33 U.S.C. § 2702(a). The Court will not engage in this kind of hairsplitting. It provides no reliable basis for divining Congressional intent. Furthermore, it is clear that Congress can abrogate prior law without specifying that law, *see Glacier Bay,* 944 F.2d at 583, or without stating that it is setting aside law at all. *See Isbrandtsen,* 72 S.Ct. at 1017."); *see Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (noting that the "Courts of Appeals . . . have 'interpreted . . . "notwithstanding" language . . . to supersede all other laws.'"); *see also United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 982 F. Supp. 2d 830, 838 (N.D. Ill. 2013), vacated on other grounds and remanded, 783 F.3d 607 (7th Cir. 2015) (noting that this clause [notwithstanding] "operates to supersede conflicting provisions of law."); *Hill v. Republic of Iraq*, No. CIV.A. 1:99CV03346TP, 2003 WL 21057173, at *2 (D.D.C. Mar. 11, 2003) (noting that the "the phrase 'notwithstanding any other provision of law,' or a variation thereof, means exactly that; it is unambiguous and effectively supersedes all previous laws."); *R.J. O'Brien & Assocs.*, 783 F.3d at 621 (noting that this clause provides TRIA with a "sweeping mechanism for recovery."); *see Bennett v. Islamic Republic of Iran*, 825 F.3d 949, 958 (9th Cir. 2016), abrogated on other grounds by *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018) (holding that the *Bancec*

presumption against the attachment of assets held by state instrumentalities did not apply to TRIA, partly because of the "[n]otwithstanding" language of that provision); *see also Gomez v. Ashcroft*, 293 F. Supp. 2d 162, 166-67 (D. Conn. 2003) (finding that the presumption of retroactivity did not apply to the Illegal Immigration Reform and Immigrant Responsibility Act's (IIRIRA) expanded definition of "aggravated felonies" for which an alien may be removed, which "closes with the statement: 'Notwithstanding any other provision of law (including any effective date) . . ..'"); *see also Schneider v. United States*, 27 F.3d 1327, 1331 (8th Cir. 1994) (the parents of an infant patient brought a suit seeking review of a decision by the US Air Force denying their claim for payment under the Military Claims Act for the USAF physician's malpractice, finding that the presumption in favor of judicial review of administrative action did not apply because the relevant provision included the phrase "notwithstanding any other provision of law.").

The Supreme Court has also stated in another FSIA immunity case: "[A]ny sort of immunity defense made by a foreign sovereign in an American court must stand on the [FSIA's] text. Or it must fall." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 141-42 (2014). Therefore, as TRIA contains express notwithstanding language, the District Court erred as a matter of law in applying a form of judicial construction to narrow the definition of blocked assets to only those in the United States. *Id.*

**(1)    Congressional Intent in the Context of TRIA and TRIA's References to Assets Blocked by OFAC Outside the United States**

In spite of *Rubin* and *NML*, both FSIA cases, the District Court excluded assets actually blocked by the Treasury Department that are being held in foreign branches of United States' banks from TRIA's reach, due to a judicial presumption applied in other contexts to interpret different federal statutes.  Thus, the District Court reached the anomalous result that assets of a terrorist, which a U.S. bank holds in its foreign branches, can be blocked (as they have been here) but then cannot reached by victims of terrorism, who can under TRIA pursue blocked assets.  Citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010), the District Court's Order states:

> Plaintiffs' argument [that OFAC blocked assets include those in foreign branches of U.S. banks under TRIA] elides a longstanding principle of statutory interpretation: the presumption against extraterritorial application. "When a statute gives no clear indication of an extraterritorial application, it has none."

SPA 5.

The District Court did not quote the limiting language in *Morrison*, a 10(b)(5) case, not one dealing with TRIA, state sponsors of terrorism, and their assets, admittedly under United States control to allow blocking in the first place. As the Supreme Court stated in *Morrison* to clarify that it was not creating a

15

general rule requiring Congress to expressly include extraterritorial language in
every statute:

> The concurrence claims we have impermissibly narrowed the
> inquiry in evaluating whether a statute applies abroad, citing for
> that point the dissent in *Aramco*, see *post*, at 6. But we do not
> say, as the concurrence seems to think, that the presumption
> against extraterritoriality is a "clear statement rule," *ibid.,* if by
> that is meant a requirement that a statute say "this law applies
> abroad." Assuredly context can be consulted as well. But
> whatever sources of statutory meaning one consults to give "the
> most faithful reading" of the text, *post*, at 7, there is no clear
> indication of extraterritoriality here [in Rule 10-b-5].

*Morrison*, 561 U.S. at 265.[8]

The District Court also mistakenly interpreted TRIA as being "silent" as to
blocked assets located outside the United States. The Court stated: "TRIA §
201(a)'s silence on whether blocked assets have to be in the United States, with
nothing more, falls short of the "clear indication" needed to apply it to an
extraterritorial asset." SPA 5. Led into error by Defendants, the Court went on to
state that "courts in this circuit and elsewhere have uniformly held or confirmed
that a foreign state's property located abroad is immune under the FSIA and
TRIA." *Id*. In support of this conclusion, the District Court cites *Walters v.
Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011), *Autotech
Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007);

---

[8] Rule 10-b-5 has no "notwithstanding "language. *See* 17 C.F.R. 240.10b-5.

*Hegna v. Islamic Republic of Iran*, 380 F.3d 1000, 1002 (7th Cir. 2004); and

*Conn. Bank of Com. v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002).

None of these cases so hold.

    *Walters* is a case dealing with a judgment against China.  It does not deal

with TRIA or property of foreign sovereigns or their agents and instrumentalities,

designated state sponsors of terrorism, which property is blocked pursuant to

Executive Orders and regulations of the Office of Foreign Asset Control.  *Walters*

*v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280 (2d Cir. 2011).  It does not

hold that that "a foreign state's property located abroad is immune under …

TRIA."  SPA 5.  *Autotech* does not hold that "a foreign state's property located

abroad is immune under … TRIA."  SPA 5.  *Autotech* does not mention TRIA; it

is dealing with other sections of the FSIA, primarily controlling commercial

disputes, not state sponsors of terrorism and collection of terrorist judgments.

*Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir.

2007).  *Hegna* is a case involving TRIA and Iran; however, it deals only with

property located in Chicago not abroad.  *Hegna* does not hold that OFAC blocked

assets held in foreign branches of U.S. banks are not subject to attachment and

collection under TRIA.  The opinion expressly states: "For the purposes of this

appeal, we need not decide whether these properties [in Illinois] are 'blocked

assets' within the meaning of TRIA § 201(d)(2)."  *Hegna v. Islamic Republic of*

*Iran*, 380 F.3d 1000, 1003, Fn. 2 (7th Cir. 2004). Finally, *Congo* does not deal with TRIA but with the commercial exception to immunity under § 1610 (a). *Conn. Bank of Com. v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002). It certainly does not hold, as the District Court stated, that "a foreign state's property located abroad is immune under … TRIA." SPA 5.

The District Court also discounted the reasoning behind the Second Circuit opinion in *Peterson v. Islamic Republic of Iran*, 876 F.3d 63 (2d Cir. 2017) ("*Peterson II*"), *cert. granted, judgment vacated sub nom. Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020), stating that the former opinion broke the trend of the other cases it cites and that "it is no longer controlling law." SPA 5.

*Peterson* was vacated based on the passage of another statute, the National Defense Authorization Act for Fiscal Year 2020, which controls the Peterson matter specifically. *See* National Defense Authorization Act for Fiscal Year 2020, Pub.L. 116–92, 133 Stat. 1198 *et seq.* (2019). Its reasoning was not criticized in any way. And the Levins did not cite *Peterson* as "controlling law," but only for its reasoning which was based on the authorities it relied on in holding that under New York state law, assets held in foreign branches of New York banks could be attached and New York courts have the power to compel such assets to be delivered to a U.S. bank's branch in the U.S. *See Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009); *Koehler v. Bank of Bermuda Ltd.*,

577 F.3d 497 (2d Cir. 2009); Section IV, *infra*. The Second Circuit did not reject its logic or reasoning in *Peterson*, or the cases it relied on for its conclusions; it simply vacated the opinion itself due to the passage of another statute, and as the Supreme Court directed, remanded the case for further proceedings applying the National Defense Authorization Act for Fiscal Year 2020, the new statute. *See Bank Markazi v. Peterson*, 140 S. Ct. 813 (2020) and *Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 196 (2d Cir. 2020). By vacating an opinion, the court does not mean it may not consider the opinion as persuasive authority and reach the same conclusions when the issue is ripe.

As a preliminary matter, it is worth noting that by definition, vacating a decision divests that decision of legal force. *Vacate*, Black's Law Dictionary (10th ed. 2014) (defining "vacate" as "[t]o nullify or cancel; make void; invalidate"). But the vacated opinion still carries significant persuasive weight. *See Silverman v. Miranda*, 213 F. Supp. 3d 519, 530 (S.D.N.Y. 2016) ("Although *Miranda III* is no longer binding on this Court, it was vacated on grounds unrelated to damages, and the Court treats the decision as persuasive authority as to those issues."); *United Nat'l Ins. Co. v. Waterfront N.Y. Realty*, *Corp*., 948 F. Supp. 263, 268 (S.D.N.Y. 1996) ("Because the Second Circuit's decision in *United National v. Waterfront* was vacated on jurisdictional grounds, it is not controlling precedent. Nonetheless, as the decision was not vacated on the merits, it remains strong

persuasive authority." (citation omitted). The Court will do the same here.") *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018).

Second, *Peterson* does not break the trend of other cases, as no other case holds that in the TRIA context, assets lawfully blocked by OFAC held in foreign branches of U.S. banks are not subject to execution to satisfy judgments against state sponsors of terrorism or their agencies, like Bank Melli. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011); *Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007); *Hegna v. Islamic Republic of Iran*, 380 F.3d 1000, 1002 (7th Cir. 2004); and *Conn. Bank of Com. v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002).

Furthermore, the District Court cited but misunderstood the Supreme Court's directions regarding statutory interpretation of the FSIA in *Republic of Argentina v. NML Capital, Ltd.* The District Court cryptically states:

> [A]ny sort of immunity defense made by a foreign sovereign in an American court must stand on the [FSIA's] text. Or it must fall.' 573 U.S. 134, 141–42 (2014) — Plaintiffs argue that they can attach and execute against the Melli Blocked Account.
>
> But Plaintiffs' argument elides a longstanding principle of
>
> statutory interpretation: the presumption against extraterritorial application.

SPA 5.

The Levins in fact cited *Republic of Argentina* in their brief below, as that case allowed extraterritorial discovery of Argentina's assets outside the United States under the general provisions of the federal rules and FSIA §1609. The Supreme Court allowed this discovery because FSIA §1609 does not extend *execution immunity* to assets outside the United States, only by its express terms, those "in the United States." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014).

As the Supreme Court stated in overruling Argentina's objections to the discovery of its assets outside the U.S. in a regular commercial case:

> More importantly, even if Argentina were right about the scope of the common-law execution-immunity rule, then it would be obvious that the terms of §1609 execution immunity are narrower, since the text of that provision immunizes only foreign-state property "in the United States." So even if Argentina were correct that §1609 execution immunity implies coextensive discovery-in-aid-of-execution immunity, the latter would not shield from discovery a foreign sovereign's extraterritorial assets [because those assets are not immune from execution].

*Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014).

It is inconsistent with the reasoning of *Rubin* and *Republic of Argentina* for the District Court to add the words, "within the United States," to the text of TRIA, which includes notwithstanding language and includes "blocked assets" with no geographical limit, based on a judicially created presumption against extraterritoriality developed in a different context. *Id.* And lower courts have

looked to the purpose of a statute containing "notwithstanding" language when determining whether or not a word, such as "persons" in a statute, should be interpreted to exclude dissolved corporations, because Congress did not expressly include that language in the statute.

> This failure to explicitly include dissolved corporations within the statute's definition of "persons" does not necessarily mean that Congress did not intend to include them within the scope of the statute's liability. Other corporate statutes enacted before CERCLA imposed liability only upon existing corporations, thereby explicitly excluding dissolved corporations. *See, e.g.,* 15 U.S.C. § 7 (limiting the Sherman Act's definition of a "person" who could be subjected to suit to "corporations and associations existing under or authorized by the laws of . . . any State"). Had Congress intended to limit liability to existing corporations, [in CERCLA] it could have expressly done so. Therefore, an examination of the plain language of the statute leads to the conclusion that Congress intended to create liability notwithstanding any other law. Therefore, the Court finds that CERCLA preempts the Colorado statute, because it actually conflicts with CERCLA. The Colorado statute stands as an obstacle to the accomplishment and execution of the full purposes of CERCLA, and under the Supremacy Clause of the Constitution must yield to federal law. *Michigan Canners,* 467 U.S. at 469, 104 S.Ct. 2518.

*Burlington N. & Santa Fe Ry. Co. v. Consol. Fibers, Inc.*, 7 F. Supp. 2d 822, 826 (N.D. Tex. 1998).

Following the imperative of the Supreme Court in *Republic of Argentina*, it is fundamental that: "'[A]ny sort of immunity defense made by a foreign sovereign [or a bank] in an American court must stand on the [FSIA's] text. Or it must fall.' 573 U.S. 134, 141-42 (2014)." SPA 5. As the Supreme Court also said in *Rubin v*

22

*Islamic Republic of Iran*, 138 S Ct 816, 823 (2018): "We turn first to the text of the statute."

However, in reviewing the text and context of TRIA, the District Court mistakenly found: "TRIA § 201(a)'s silence on whether blocked assets have to be in the United States, with nothing more, falls short of the 'clear indication' needed to apply it to an extraterritorial asset." SPA 5. But TRIA is not silent as to the definition of blocked assets and there is "more," much more in the statute. TRIA defines a "blocked asset" as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702) [("IEEPA")]." TRIA § 201(d)(2)(A). The OFAC regulations that blocked the Melli asset in the first place were promulgated pursuant to Executive Order 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001) § 7, which executive authority was invoked under the IEEPA, 50 U.S.C. §§ 1701 *et seq*. The regulations block any "property and interests in property" of Specially Designated Global Terrorists ("SDGT"). 31 C.F.R. § 594.201(a); *see also id.* § 594.310 (defining SDGT as "any person whose property and interests in property are blocked pursuant to § 594.201(a)"); *also see* 31 C.F.R. § 544.201(a) (regulation expressly provides that the assets of Specially Designated Nationals ("SDN") that come into the control of "overseas branches" of US banks are blocked); *Bank of*

*New York v. Rubin*, 484 F.3d 149 (2d Cir. 2007) ("The TRIA defines 'blocked

asset' as 'any asset seized or frozen by the United States under section 5(b) of the

Trading With the Enemy Act ( 50 U.S.C. App. § 5(b)) or under sections 202 and

203 of the International Emergency Economic Powers Act (50 U.S.C. §§ 1701;

1702).'").  Furthermore, IEEPA defines blocked property specifically to include

branches of U.S. entities, which are outside the United States:

> (1) Blocking of property.—The President shall exercise all of the
> powers granted to the President under the International
> Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) to the
> extent necessary to block and prohibit all transactions in property
> and interests in property of the foreign person or agency or
> instrumentality of a foreign state if such property or interests in
> property are in the United States, come within the United States,
> *or are or come within the possession or control of a United
> States person*…. (7) United States person.—The term 'United
> States person' means any United States citizen, permanent
> resident alien, entity organized under the laws of the United
> States *(including foreign branches)*, or any person in the United
> States.

50 U.S.C. §§ 1701-1702 (IEEPA) (emphasis added).

    Thus, TRIA itself, in the text, defines blocked assets, referencing the IEEPA,

to include blocked assets in the foreign branch of a United States person.  *Id.*

JPMorgan admits it is organized under the laws of the United States.  JA 397.

JPMorgan London admits it is a foreign branch of JPMorgan and that there is

personal jurisdiction over it in New York.[9]  ("JPMorgan's response to these

---

[9] SPA 3 at Fn. 2 ("For the purposes of this motion, Defendants concede that

[Levin] interrogatories disclosed the existence of an additional Iranian blocked asset, the Melli Blocked Account, located at its London branch. (Dkt. No. 1356 ¶¶ 1, 4.").  SPA 2.  JPMorgan admits that it is holding in London, assets blocked by OFAC regulations promulgated under IEEPA and TRIA.  *Levin II* Dkt. 1369 at 7; *see* JA 70, ¶ 3; and JA-119, §§ 3(6)(a-b).  As the district court stated in its Order:

> Defendants and Garnishees JPMorgan Chase Bank, N.A. ("JPMorgan") and JPMorgan Chase Bank, N.A./London have reported to the Office of Foreign Assets Control of the United States Treasury Department that they are in possession of assets blocked by the
> United States government because Iran has an interest in the assets directly or    indirectly. (Dkt. No. 1356 ¶ 3.) The [U.S.] government has blocked these assets to carry out economic sanctions against terrorists, terrorist groups, and state sponsors of terrorism, including Iran. *Id.*

SPA 2; *see also Levin v. Bank of N.Y. Mellon*, 09 CV 5900 RPP, 2013 WL 5312502 at *14 (S.D.N.Y. Sept. 23, 2013) ("On September 18, 2009, the U.K. JPMorgan branch recognized that was an entity subject to OFAC blocking regulations, and the assets were transferred into a frozen account. *See* 31 C.F.R. § 544.203"); *see* JA 118-119, §§ 3(6)(a-c).

TRIA is not silent as to blocked assets in branches of U.S. banks outside the United States, as it expressly includes assets blocked under the International Emergency Economic Powers Act and the Trading with the Enemy Act, "or any

---

the Court has personal jurisdiction over Defendants. (*See* Dkt. No. 1369 at 2.).").

other proclamation, order, regulation, or license issued pursuant thereto." FSIA 28 U.S.C. § 1610(f)(1)(A); *see also* TRIA § 201. Therefore, by its own rule of interpretation, the District Court erred as a matter of law in finding that the Melli asset blocked by federal law in JPMorgan's London branch is not subject to turnover by the Levins to partially satisfy their judgment against Iran. This Court should reject this new rule that creates a unique class of assets that can be blocked under the power of U.S. law, but cannot be reached by American victims of terrorism for whose benefit the law was created. *Calderon-Cardona v. Bank of N.Y. Mellon, HSBC*, 770 F.3d 993, 998 (2d Cir. 2014) ("In an effort to aid victims of terrorism to satisfy their judgments Congress in 2002 enacted TRIA which is not subject to presidential waivers issued under 28 U.S.C. § 1610(f).").

## IV.  FRCP 69 AND NEW YORK STATE LAW AUTHORIZE STATE AND FEDERAL COURTS TO EXECUTE ON ASSETS HELD IN FOREIGN BRANCHES OF UNITED STATES BANKS

The District Court also rejected any argument that New York State law, which gives courts the power to order any extraterritorial assets held in the foreign branch of a New York bank to be transferred to New York. The District Court stated:

> Plaintiffs' reliance on *Koehler v. Bank of Bermuda Ltd.*, 577 F.3d 497 (2d Cir. 2009), does not save the day for their supplemental complaint. In *Koehler*, the Second Circuit had previously certified the following question to the New York

Court of Appeals: whether Article 52 of the New York Civil Practice Law and Rules allowed a court sitting in New York to order a bank over which it had personal jurisdiction to deliver stock certificates owned by a judgment debtor to a judgment creditor when those stock certificates were located in Bermuda. *See id.* at 499. The New York Court of Appeals answered the question in the affirmative, explaining that Article 52 of the CPLR did not contain a territorial limitation.

SPA 7.

The District Court held that *Koehler* did not involve the FSIA or TRIA, and that even if non blocked assets could be ordered transferred by a federal court from a bank outside the United States using state law under Article 52 of the CPLR, the federal courts do not have this power over federally blocked assets overseas. The District Court stated:

But *Koehler* did not involve interpreting any sections of the FSIA or TRIA, much less holding that these statutes rebutted the presumption against extraterritoriality. Moreover, the case did not concern the property of a foreign sovereign or a foreign sovereign's instrumentality. Rather, the property at issue belonged to a private individual outside of the United States. *See id.* at 498.

SPA 7.

The District Court erroneously reasoned that a terrorist, stripped of sovereign immunity under the FSIA and Executive Order, nevertheless was entitled under the FSIA to greater privileges than a private citizen under state law. *Id.* Furthermore, the District Court did not explain how the Second Circuit could

27

apply the ruling of the highest court in New York on the certified issue when that

Court ruled that New York's collection statute reached extraterritorial assets, even

though it does not expressly so state.  The Second Circuit in *Koehler* frames the

question and answer on the power of the New York Courts including the federal

court as follows:

> May a court sitting in New York order a bank over which it has
> personal jurisdiction to deliver stock certificates owned by a
> judgment debtor (or cash equal to their value) to a judgment
> creditor, pursuant to N.Y. C.P.L.R. Article 52, when those
> stock certificates are located outside New York?

*Koehler v. Bank of Bermuda Ltd.*, 544 F.3d 78, 88 (2d Cir.), certified question

accepted, 11 N.Y.3d 801 (2008), and certified question answered, 12 N.Y.3d 533

(2009).

On June 4, 2009, the New York Court of Appeals answered the question in

the affirmative.  *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 536 (2009).

The Court of Appeals explained that "CPLR article 52 contains no express

territorial limitation barring the entry of a turnover order that requires a garnishee

to transfer money or property into New York from another state or country."  *Id.* at

539.  It further explained that "the key to the reach of the turnover order is personal

jurisdiction over a particular defendant," *id.* at 540, and that in rem jurisdiction

over the property is not required if there is personal jurisdiction over the defendant.

*Id.*  The Court of Appeals held "that a New York court with personal jurisdiction

over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee." *Id.* at 541. *Koehler v. Bank of Bermuda Ltd.*, 577 F.3d 497, 499 (2d Cir. 2009); *see also Koehler v. Bank of Bermuda Ltd.*, 544 F.3d 78, 81-82 (2d Cir. 2008), *certified question accepted*, 11 N.Y.3d 801 (2008), *and certified question answered*, 12 N.Y.3d 533 (2009).

The Levins also seek to collect their judgment under the authority of New York state law procedures pursuant to FRCP 69. *See* JA 4-8, ¶¶ 7-19. *Walters v. Industrial and Commercial Bank of China*, 651 F.3d 280, 285 (2d Cir. 2011) ("Pursuant to Federal Rule of Civil Procedure 69(a), state law supplies the procedures for the enforcement of judgments in federal court including proceedings to attach or execute upon the assets of foreign sovereigns under the FSIA."). However, the District Court held that notwithstanding Rule 69 and Second Circuit authority as to the FSIA collection procedures, the Court's limited interpretation of TRIA preempts the state statute.

> In any event, even if Article 52 of the CPLR would allow execution against the Melli Blocked Account, TRIA and the FSIA would preempt this state law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (noting that "state law is naturally preempted to the extent of any conflict with a federal statute"); *see also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010) (stating that "California law on the enforcement of judgments applies to this suit insofar as it does not conflict with the FSIA"). The FSIA, including TRIA § 201(a), does not permit executing against extraterritorial assets. Plaintiffs cannot rely upon state law to circumvent the FSIA's authority. *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528,

> 532 (5th Cir. 1992) ("The FSIA sets forth the sole and exclusive standards to be used to resolve all sovereign immunity issues raised in federal and state courts." (internal quotation marks omitted)). The Court therefore grants Defendants' motion to dismiss.

JA717-718.

Subsequent courts have also applied the finding of the New York Court of Appeals in *Koehler,* contrary to the District Court's finding. *See, e.g.*, *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234, 238-39 (S.D.N.Y. 2011) ("In *Koehler*, the New York Court of Appeals concluded that "a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to [ *239 N.Y. C.P.L.R. § 5224(b) ]." . . . As long as a court sitting in New York maintains personal jurisdiction over a garnishee, the court may order the garnishee to bring into New York the judgment debtor's property located elsewhere."); *AP MA Funding, LLC v. Wells Fargo Clearing Servs.*, 2020 N.Y. Slip Op. 31242, 4 (N.Y. Sup. Ct. May 7, 2020) ("Along those lines, AP MA cites *Koehler v Bank of Bermuda Ltd.*, 12 NY3d 533, 541 (2009), wherein the Court of Appeals expressly held that 'a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to CPLR 5225 (b).'"). In *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587 (S.D.N.Y. 2011), the district court cited *Koehler* as the basis for its authority to

order a bank over which it had personal jurisdiction to turn over assets located in

Germany: "This Court has general personal jurisdiction over Commerzbank, and

thus under *Koehler*, this Court may issue a turnover order under N.Y. CPLR §

5225(b) directing Commerzbank to turn over funds up to the amount of the

judgment, regardless of whether those accounts are held in Germany or New

York." *Id.* at 593, 598 (holding also that "international comity does not require

this court to decline to enforce the judgment of the District Court for the Western

District of Oklahoma through turnover proceedings in this district."); *Republic of*

*Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014) (holding that the FSIA does

not convey sovereign immunity for post judgment discovery over assets overseas

which are subject to execution under the statute); *see also United States v. First*

*Nat'l City Bank*, 379 U.S. 378, 384 (1965) ("Once personal jurisdiction of a party

is obtained, the district court has authority to order it to 'freeze' property under its

control, whether the property be within or without the United States."); *In re Feit*

*& Drexler, Inc.*, 760 F.2d 406, 410, 416 (2d Cir. 1985) (requiring defendant to

bring funds in Swiss bank accounts into the U.S. to prevent her from dissipating

those assets).

The Second Circuit has held that in a collection and turnover action, the

federal court is to apply state law. *Koehler*, 544 F.3d at 85. Additionally, the

Second Circuit has held that the Court has the power to order a foreign financial

31

institution to transfer blocked assets to New York to satisfy a judgment. *See*

*Koehler*, 577 F.3d at 499.

> JPMorgan argues that: "FSIA §§ 1610(a)(7) and 1610(b)(3)
> explicitly apply only to a foreign state's or instrumentality's
> property 'in the United States.'"[10]  However, this case involves
> TRIA § 201(a) and FSIA § 1610(g).  As the district court stated
> in *Smith v. Federal Reserve Bank of New York*: Although the
> "notwithstanding" language Congress used in the TRIA was
> broad, it necessarily has a scope and that scope depends on the
> substance of the provision to which it is attached. The substance
> of Section 201(a) is that "the blocked assets of that terrorist party
> ... shall be subject to execution or attachment" to pay the terrorist
> party's liability for compensatory damages. The phrase
> "notwithstanding any other provision of law" simply means that
> Section 201(a) controls if there is another provision of law that
> conflicts with it. As Judge Jackson found, to the extent that a
> foreign country's sovereign immunity potentially conflicts with
> Section 201(a), the "notwithstanding" phrase removes the
> potential conflict.

*Smith v. Fed. Rsrv. Bank of New York*, 280 F. Supp. 2d 314, 319 (S.D.N.Y.), *aff'd*,

75 F. App'x 860 (2d Cir. 2003), *and aff'd sub nom. Smith ex rel. Est. of Smith v.*

*Fed. Rsrv. Bank of New York*, 346 F.3d 264 (2d Cir. 2003).

As is discussed *supra*, TRIA does not limit collection of assets to those in

the United States.  *See generally* TRIA § 201; 28 U.S.C. § 1610(g).  When a statute

uses language in one part and omits it in another, the presumption is that this was

intentional, not an oversight.[11]

---

[10] *Levin II* Dkt. 1369 at 16.

[11] *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("'Where Congress includes
particular language in one section of a statute but omits it in another section of the

Since New York state law is not in conflict with a proper interpretation of TRIA to include extraterritorial blocked assets held in a foreign branch of a United States bank, *Koehler* provides controlling law that the District Court does have the authority and must order the Bank Melli blocked assets held by JPMorgan's London branch, over which the Court has personal jurisdiction, to be sent to New York, and made available for collection by the Levins to satisfy their Judgment against Iran.

## **CONCLUSION**

For the foregoing reasons the District Court's order granting JPMorgan's motion to dismiss the Levins' Supplemental Complaint should be reversed; the judgment should be vacated and the case should be remanded to the District Court for further collection proceedings.

Dated: July 5, 2022                    Respectfully Submitted,

                                       HOWARTH & SMITH
                                       SUZELLE M. SMITH

                              By:    */s/ Suzelle M. Smith*
                                     Suzelle M. Smith (5376900)

---

same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *also see Mississippi v. AU Optronics Corp.*, 134 S.Ct. 736, 742 (2014) ("[W]e presume that 'Congress is aware of existing law when it passes legislation.'") (quoting *Hall v. United States*, 132 S.Ct. 1882, 1889 (2012)); *see supra* at § III B.

33

ssmith@howarth-smith.com
523 West Sixth Street, Suite 728
Los Angeles, California 90014
(213) 955-9400

*Attorneys for Levin Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,401 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, Version 2205, in 14-point Times New Roman font.