# 22-624

_____

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE SECOND CIRCUIT

_____

DR. LUCILLE LEVIN, SUZELLE M. SMITH, as Trustee of the Jeremy Isadore Levin 2012 Revocable Trust, as amended,

Plaintiffs – Third-Party-Defendants – Cross-Defendants – Appellants,

*(See Inside Cover for Continuation of Caption)*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

**REPLY BRIEF OF APPELLANTS DR. LUCILLE LEVIN AND SUZELLE M. SMITH, AS TRUSTEE OF THE JEREMY ISADORE LEVIN 2012 REVOCABLE TRUST, AS AMENDED**

_____

Suzelle M. Smith
Don Howarth
HOWARTH & SMITH
523 West Sixth Street, Suite 728
Los Angeles, California
(213) 955-9400

*Attorneys for Levin Appellants*

JEREMY LEVIN,

       Plaintiff,

THE BANK OF NEW YORK MELLON,

       Third-Party-Plaintiff-Counter-Defendant,

v.

BANK OF NEW YORK, SOCIETE GENERALE CORPORATE &
INVESTMENT BANKING, BNP PARIBAS, COMMERZBANK AG, JOHN
BECKER, THE ESTATE OF ANTHONY BROWN, JOHN R. CUDDLEBACK,
KATHY HODGES, RICHARD H. MENKINS, (BROTHER) RICHARD
SCHNORF, (FATHER) ROBERT SCHNORF, JP MORGAN CHASE,
JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE & CO., AHME
BUYUK, JPMORGAN CHASE BANK, N.A./LONDON,

       Defendants-Third-Party-Plaintiffs-Counter-Defendants-Appellees,

CITIBANK,

       Defendant-Third-Party-Plaintiff-Counter-Defendant-Third-Party-
    Defendant-Cross-Defendant-Appellee,

JENNY RUBIN, DEBORAH RUBIN, NORMAN RUBIN, ABRAHAM
MENDELSON, STUART E. HERSH, RENAY FRYM,

       Third-Party-Defendants-Cross-Defendants-Consolidated-Third-Party-
    Defendants,

REDACTED THIRD-PARTY DEFENDANT, TERRANCE VALORE,
CATHRINE BONK HUNT, JOHN BONK, SR., KEVIN BONK, THOMAS
BONK, LISA DIGIOVANNI, MARION DI GIOVANNI, ROBERT
DIGIOVANNI, DANIELLE DIGIOVANNI, SHERRY LYNN FIEDLER,
ROBERT FLUEGEL, THOMAS A. FLUEGEL, MARILOU FLUEGEL, EVANS
HAIRSTON, FELICIA HAIRSTON, JULIA BELL HAIRSTON, HENRY
HUKILL, MARK ANDREW HUKILL, MATTHEW SCOTT HUKILL,
MELISSA HUKILL, MEREDITH ANN HUKILL, MITCHELL CHARLES
HUKILL, MONTE HUKILL, VIRGINIA ELLEN HUKILL, STORM JONES,

PENNI JOYCE, CARL KIRKWOOD, SR., JEFF KIRKWOOD, SHIRLEY
KIRKWOOD, CARL A. KIRKWOOD, PATRICIA KRONENBITTER, JAMES
MACGROGLOU, LORRAINE MACGROGLOU, BILL MACGROUGLOU,
BETTY LAISE, KATHY MCDONALD, EDWARD W. MCDONOUGH, SEAN
MCDONOUGH, EDWARD J. MCDONOUGH, ROSE ROTONDO, ESTATE
OF, LUIS ROTONDO, PHYLLIS SANTOSERRA, DEBORAH RHOSTO,
ROBERT SIMPSON, RENEE EILEEN SIMPSON, LARRY SIMPSON, SR.
ANNE MARIE SIMPSON, SALLY JO WIRICK, JUANITA R. GOLDFARB,
DAVID A. BATTLE, ESTATE OF, MARY V. HERNANDEZ, MATILDE
HERNANDEZ, ESTATE OF, ROBERT MIFFLER, JR. JOHN MUFFLER,
ESTATE OF, JUTTA YARBER, JAMES YARBER, ESTATE OF, RONALD I.
TISHMACK, JOHN JAY TISHMACK, ESTATE OF, DOROTHY WINT, CELIA
WALKER, DOROTHY C. WINT PEDRO ALVARADO, JR. ANDRES
ALVARADO TULL, ANGEL ALVARADO, GERALDO ALVARADO
GRISSELLE ALVARADO, LUIS ALVARADO, LUISA ALVARADO, MARIA
ALVARADO, MARTA ALVARADO, MINERVA ALVARADO, YOLANDO
ALVARADO, ZORAIDA ALVARADO, DENNIS LACK ANDERSON, FLOYD
MARTIN CARPENTER, MICHAEL HARRIS, ROSE HARRIS, DONALD R.
PONTILLO, DEBORAH TRUE, DOUGLAS PONTILLO, LEONORA
PONTILLO, JOHN E. SELBE, ELOISE F. SELBE, BELINDA SKARKA, DON
SELBE, JAMES SELBE, WILLY G. THOMPSON, ALLISON THOMPSON,
IFALINE THOMPSON, CHERYL BASS, JOHNNY THOMPSON, WANDA
FORD, ORLANDO MICHAEL VALORE, SR., ORLANDO M. VALORE, JR.,
JANICE VALORE, MARCY LYNN PARSON, TIMOTHY BROOKS,
EDWARD J. BROOKS, PATRICIA A. BROOKS, ESTATE OF MICHAEL
HEISER, FRANCIS HEISER, GARY HEISER, HERMAN C. MARTHALER, III,
KATIE L. MARTHALER, SHARON MARTHALER, KIRK MARTHALER,
KATHLEEN M. WOOD, RICHARD M. WOOD, ANTHONY W. CARTRETTE,
DENISE M. EICHSTAEDT, LEWIS W. CARTRETTE, ESTATE OF PATRICK
FENNIG, CATHERINE FENNIG, INDIVIDUALLY AND AS PERSONAL,
REPRESENTATIVE, OF THE ESTATE OF PATRICK FENING, MARK
FENNIG, PAUL D. FENNIG, ESTATE OF CHRISTOPHER ADAMS,
CATHERINE ADAMS, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER ADAMS, MARY
YOUNG, DANIEL ADAMS, ELIZABETH WOLF, PATRICK ADAMS, JOHN
ADAMS, WILLIAM ADAMS, MICHAEL ADAMS, ESTATE OF THANH GUS
NGUYEN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF THANH GUS NGUYEN, SANDRA M. WETMORE,
BRIDGET BROOKS, JAMES RIMKUS, ANNE RIMKUS, ESTATE OF
KENDALL KITSON, JR., KENDALL KITSON SR., INDIVIDUALLY AND AS

PERSONAL REPRESENTATIVE, OF THE ESTATE IF KENDALL KITSON,
NANCY R. KITSON, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF KENDALL KITSON JR., STEVEN
K. KITSON, NANCY A. KITSON, LAWRENCE TAYLOR, STARLINA
TAYLOR, ESTATE OF JOSHUA WOODY, DAWN WOODY, BERNADINE R.
BEEKMAN, TRACEY M. SMITH, JONICA L. WOODY, TIMOTHY WOODY,
IBIS "JENNY&QUO HAUN, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF LELAND "TIM" HAUN, ESTATE
OF LELAND TIMOTHY HAUN, SENATOR HAUN, MILLY PEREZ-
DALLIS, ESTATE OF CHRISTOPHER LESTER, CECIL H. LESTER, CECIL
LESTER, JR., JESSICA LESTER, SHYRL JOHNSON, INDIVIDUALLY AND
AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KEVIN JOHNSON,
SR, NICHOLAS JOHNSON, ESTATE OF PETER MORGERA, MICHAEL,
MORGERA, INDIVIDUALLY OF THE, THOMAS MORGERA, ESTATE OF
MILLARD DEE CAMPBELL, MARIE CAMPBELL, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF MILLARD DEE
CAMPBELL, BESSIE CAMPBELL, ESTATE OF JUSTIN WOOD, ESTATE OF
EARL CARTRETTE, JR. ESTATE OF BRIAN MCVEIGH, ESTATE OF
JEREMY TAYLOR, JAMES WETMORE, GEORGE BEEKMAN, CHE G.
COLSON, LAURA JOHNSON, SEALED- THIRD PARTY DEFENDANT, THE
BANK OF TOYKO-MITSUBISHI UFJ, LTD. (LONDON BRANCH), THE
ESTATE OF JAMES SILVIA AND LYNNE MICHOL SPENCER, THE BANK
OF TOKYO-MITSUBISHI UFJ, LTD. (NEW YORK BRANCH), JOSEPH A.
BARILE, ANGELA E. BARILE, MICHAEL BARILE, ANDREA CIARLA, ANN
MARIE MOORE, ANGELA YOAK, VARA BROWN, JOHN BROWN, SULBA
BROWN, ROWEL BROWN, MARVINE MCBRIDE, LAJUANA SMITH,
RODNEY E. BURNS, JEANNIE SCAGGS, EUGENE BURNS, DAVID BURNS,
DANIEL CUDDEBACK, JR., DANIEL CUDDEBACK, SR., BARBARA
CUDDEBACK, ROBERT DEAN, MICHAEL EPISCOPO, RANDY GADDO,
PETER GADDO, GADDO BLATTER, THE ESTATE OF WILLIM R. GAINES,
JR., MICHAEL A. GAINES, CAROLYN SPEARS, WILLIAM R. GAINES, SR.,
EVELYN SUE SPEARS ELLIOT, CAROL WEAVER, THE ESTATE OF
VIRGEL HAMILTON, GLORIA HAMILTON, BRUCE HASTING, MARY
JEAN HODGE, MAYNARD HODGES, LORRETA BROWN, CINDY
HOLMES, SHANA SAUL, DANIEL JOY, SEAN KIRKPATRICK, JOSEPH T.
KREMER, JACQUELINE STAHRR, THE ESTATE OF CHRISTINE KREMER,
THE ESTATE OF THOMAS KREMER, THE ESTATE OF DAVID A. LEWIS,
BETTY LEWIS, JERRY L. LEWIS, SCOTT M. LEWIS, PAUL MARTINEZ,
SR., TERESA GUNTERH, ESTHER MARTINEZ PARKS, ALPHONSO
MARTINEZ, DANIEL MARTINEZ, MICHAEL MARTINEZ, PAUL

MARTINEZ, JR., JOHN OPATOVSKY, STEVEN G. OWEN, ALBERT PAGE, JANET PAGE, JOSEPH PENOSKY, CHRISTIAN R. RAUCH, THE ESTATE OF BURTON WHERLAND, THE ESTATE OF JEFFREY BRUCE OWEN, THE ESTATE OF MICHAEL LEE PAGE, LEONARD PAUL TICE, CHARLES F. WEST, CHARLES H. WEST, RICK WEST, GREGORY WHERLAND, KIMMY WHERLAND, SARAH WHERLAND, SUSANNE YEOMAN, IBIS S. HAUN, ALAN HAYMAN, SHIRLEE HAYMAN, KATHLEEN M. WOOD, , BRIDGET BROOKS, ESTATE OF JOSEPH E. RIMKUS, ESTATE OF KEVIN J. JOHNSON, BRUCE JOHNSON, K.J., A MINOR, , N.A.J, A MINOR, SHYRL L. JOHNSON, MICHAEL T. ADAM, ESTATE OF PETER J. MORGERA, ESTATE OF THANH VAN NGUYE, MARY YOUNG, DONTE AKILI MWAIPAPE, DONTI AKILI MWAIPAPE, DEBORA DONTI MWAIPAPE, ELISHA DONTI MWAIPAPE, NKO DONTI MWAIPAPE, VICTORIA DONTI MWAIPAPE, JUDY LESTER, LAWRENCE TAYLOR, STARLINA D. TAYLOR, VICKI L. TAYLOR, MONICA AKILI, ESTATE OF ABDU YUSUPH SHAMTE DNANGE, ESTATE OF ABDUL SHABANI MTUYLA, ESTATE OF JUMA YUSUPH SHAMTE DNANGE, ESTATE OF MTENDEJE RAJABU, ESTATE OF MWAJABU YUSUPH SHAMTE DNANGE, ESTATE OF ROGATH SAIDI SAIDI, ESTATE OF SAIDI SHABANI MTUYLA, ESTATE OF YUSUF SHAMTE NDANGE, ANGELINA MATHEW FELIX, ABELLA VALENTINE KATUNDA, DEISERY VALENTINE MATHE KATUNDA, DIANA VALENTINE KATUNDA, EDWINE VALENTINE MATHE KATUNDA, VALENTINE MATHEW KATUNDA, VEIDIANA VALENTINE KATUNDA, VENANT VALENTINE MATHE KATUNDA, CECILIA SAMUEL MARCUS, CORONELLA SAMUEL MARCUS, SAMUAL THOMAS MARCUS, ANGELINA MATHEW-FERIX, SHABANI SAIDI MTULYA, AKILI MUSUPAPE, ALLI KINDAMBA NG'OMBE, ADABETH SAID NANG'OKO, HANUNI RAMADHANI NDANGE, MOHAMED ALLI NG'OMBE, KINDAMBA ALLI NG'OMBE, EDWARD MATHEW RUAHESHELWA, ANGELINA MATHEW RUTAHESHELWA, ELISABETH MATHEW RUTAHESHELWA, ENOC MATHEW RUTAHESHELWA, ERIC MATHEW RUTAHESHELWA, HAPPINESS MATHEW RUTAHESHELWA, EILEEN PRINDEVILLE AHLQUIST, MIRALDA, (JUDITH MAITLAN ALARCON, MARVIN ALBRIGHT, JARNAAL MUATA ALI, ANNE ALLMAN, DIANNE MARGARET ALLMAN, JOHN ROBERT ALLMAN, MARGARET E. ALVAREZ, MARGARET ANGELONI, KIMBERLY F. ANGUS, JESUS ARROYO, MILAGROS ARROYO, PABLO ARROYO, ANTHONY BANKS, DONNIE BATES, ESTATE OF AISHA MAWAZO, ESTATE OF DANIEL ROGATH SAIDI, ESTATE OF DOTIO RMADHANI, ESTATE OF IDIFONCE ROGATH SAIDI, ESTATE OF JOHN ROGATH

SAIDI, ESTATE OF MAJALIWA RAMADHANI, ESTATE OF RENEMA
RAMADHANI, ESTATE OF SELINA ROGATH SAIDI, ESTATE OF UPEMDO
RAMADHANI, ESTATE OF VERONICA ALOIS SAIDI, ESTATE OF WENGO
RAMADHANI, KULWA RAMADHANI, JOHNNY BATES, LAURA BATES,
MARGIE BATES, MONTY BATES, RONNY KENT BATES, THOMAS C.
BATES, SR., MARY E. BAUMGARTNER, ANTHONY BAYNARD, BARRY
BAYNARD, EMERSON BAYNARD, JAMES BAYNARD, PHILIP BAYNARD,
STEPHEN BAYNARD, THOMASINE BAYNARD, TIMOTHY BAYNARD,
WAYNE BAYNARD, JESS W. BEAMON, ANNA BEARD, MARY ANN
BECK, ALUE BELRNER, ALVIN BURTON BELRNER, ANNETTE
BELRNER, CLARENCE BELRNER, COLBY KEITH BELRNER, DONNA
BELRNER, FAYE BELRNER, KENNETH BELRNER, LUDDIE BELRNER,
SHAWN BIELLOW, MARY FRANCIS BLACK, DONALD BLANKENSHIP,
SR., MARY BLANKENSHIP, (ESTATE OF), RICHARD D. BLANKENSHIP,
ALICE BLOCKER, DOUGLAS BLOCKER, JOHN R. BLOCKER, ROBERT
BLOCKER, JOSEPH BOCCIA, JOSEPH J. BOCCIA, SR., RAYMOND
BOCCIA, JOHN, JR., RICHARD BOCCIA, RONNIE BOCCIA, (VERONICA),
LETICIA BODDIE, ANGELA BOHANNON, ANTHONY BOHANNON,
CARRIE BOHANNON, DAVID BOHANNON, EDNA BOHANNON, LEON
BOHANNON, RICKI BOHANNON, LEON BOHANNON, JOHN BONK, JR.,
JEFFREY JOSEPH BOULOS, JOSEPH BOULOS, LYDIA BOULOS, MARIE
BOULOS, REBECCA BOWLER, JOHN NORMAN BOYETT, LAVON
BOYETT, JOHN NORMAN BOYETT, (ESTATE OF), THERESA U. ROTH
BOYETT, WILLIAM A. BOYETT, SUSAN SCHNORF BREEDEN, DAMION
BRISCOE, CHRISTINE BROWN, ROSANNE BRUNETTE, MARY LYNN
BUCKNER, CLAUDE BURLEY, MYRA BURLEY, WILLIAM BURLEY,
WILLIAM DOUGLAS BURLEY, RODNEY DARRELL BURNETTE, (ESTATE
OF), KATHLEEN CALABRO, RACHEL CALDERA, AVENELL CALLAHAN,
MICHAEL CALLAHAN, PAUL CALLAHAN, PATRICIA CALLOWAY,
(PATSY ANN), ELISA ROCK CAMARA, CANDACE CAMPBELL, BRADLEY
CAMPUS, CLARE CAMPUS, ELAINE CAPOBIANCO, OLYMPIA
CARLETTA, KIMBERLY CARPENTER, FLORENE MARTIN CARTER,
PHYLLIS A. CASH, THERESA CATANO, BRUCE CEASAR, FRANKLIN
CEASAR, FREDRICK CEASAR, JOHNNIE CEASAR, ROBBIE NEIL
CEASAR, SYBIL CEASAR, CHRISTINE DEVLIN CECCA, TAMMY
CHAPMAN, JAMES CHERRY, SONIA CHERRY, ADELE H. CHIOS, JANA
M. CHRISTIAN, SHARON ROSE CHRISTIAN, SUSAN CIUPASKA,
LESHUNE STOKES CLARK, ROSEMARY CLARK, MARY ANN COBBLE,
KAREN SHIPP COLLARD, JENNIFER COLLIER, DEBORAH M.
COLTRANE, CHRISTOPHER COMES, FRANK COMES, SR., FRANK

COMES, JR., JOAN COMES, PATRICK COMES, JAMES N. JR CONLEY,
ROBERT ALLEN CONLEY, ROBERTA LI CONLEY, CHARLES F. COOK,
CHARLES DENNIS COOK, ELIZABETH A. COOK, MARY A. COOK, ALAN
TRACY COPELAND, (ESTATE OF), BETTY COPELAND, DONALD
COPELAND, JOHNNY LEN COPELAND, BLANCHE CORRY, DAVID
COSNER, HAROLD COSNER, JEFFREY COSNER, LEANNA COSNER,
MARVA LYNN COSNER, CHERYL COSSABOOM, (ESTATE OF), BRYAN
THOMAS COULMAN, DENNIS P. COULMAN, CHRISTOPHER J.
COULMAN, KEVIN COULMAN, LORRAINE M. COULMAN, TIMOTHY
GADDO, DANIEL KREMER, TOMASITA L. MARTINEZ, JOYCE CLIFFORD,
DAVID PENOSKY, SHARON DAVIS, ALAN C. ANDERSON, MICHAEL
ANDERSON, THELMA ANDERSON, STEPHEN BOYD BLAND, ESTATE OF
FRANK BLAND, RUTH ANN BLAND, JAMES BLAND, ESTATE OF LAURA
VIRGINA COPELAND, SIDNEY DECKEY, IDA DECKER, DUDLEY
DECKER, JOHNNIE DECKER, CAROLYN MUDD, RONALD DUPLANITY,
ESTATE OF SEAN F. ESTER, LOUIS ESTLER, JR., MARY ELLEN ESTLER,
ESTATE OF BENJAMIN E. FULLER, ELLAINE ALLEN, ERNEST C.
FULLER, JOHN GIBSON, HOLLY GIBSON, MAURICE GIBSON, ESTATE
OF MICHAEL HASTINGS, JOYCE HASTINGS, ESTATE OF PAUL HEIN,
CHRISTOPHER HEIN, JO ANN HEIN, KAREN HEIN-SULLIVAN, VICTOR J.
HEIN, JACQUELINE M. KUNYSZ, ESTATE OF JOHN HENDRICKSON,
JOHN HENDRICKSON, TYSON HENDRICKSON, DEBORAH RYAN,
ESTATE OF BRUCE HOLLINGSHEAD, TYSON HENDRICKSON,
MELINDA HOLLINGSHEAD, RENARD MANLEY, ESTATE OF MICHAEL
ROBERT MASSMAN, NICOLE GOMEZ, ANGELA MASSMAN,
KRISTOPHER MASSMAN, LYDIA MASSMAN, PATRICIA LOU SMITH,
ESTATE OF LOUIS MELENDEZ ZAIDA MELENDEZ, DOUGLAS JASON
MELENDEZ, JOHNNY MELENDEZ, JOHNNY MELENDEZ, JR., ESTATE OF
MICHAEL MERCER, SARAH MERCER, SAMUEL PALMER, ROBIN
NICELY, ESTATE OF JUAN C. RODRIGUEZ, LOUISA PUNONET, ROBERT
RUCKER, ESTATE OF BILLY SAN PEDRO, CESAR SAN PEDRO, SILA V.
SAN PEDRO, GUILLERMO SAN PEDRO, JAVIER SAN PEDRO,
THURNELL SHIELDS, EMANUEL SIMMONS, ESTATE OF JAMES SURCH,
PATTY BARNETT, WILL SURCH, BRADLEY ULICK, JEANETTE
DOUGHERTY, MARILYN PETERSON, ESTATE OF ERIC WALKER, TENA
WALKER-JONES, RONALD E. WALKER, GALEN WEBER, ESTATE OF
OBRIAN WEEKES, ANSON EDMOND, ARNOLD EDMOND, ARNOLD
EDMON, HAZEL EDMOND, WENDY EDMOND, FAITH WEEKES, KEITH
WEEKES, IANTHE WEEKES, META WEEKES, ESTATE OF DENNIS
LLOYD WEST, KATHY WEST, ESTATE OF JOHN WEYL, KELLY

BACHLOR, ROBIN BROCK,  MORGAN BROCK, MORGAN W. ROWAN,
SHARON J. ROWAN, NELSON WEYL, THE INTERNATIONAL BANK OF
AZERBAIJAN-MOSCOW LLC, CARLOS ACOSTA, MARIA ACOSTA, TOVA
ETTINGER, IRVING FRANKLIN, BARUCH KAHANE, LIBBY KAHANE,
CIPORAH KAPLAN, STEVEN M. GREENBAUM, CATHERINE BONK,
ESTATE OF, SANDRA GOFF, GARY ROBERT OWENS, JAMES OWENS,
BARK F. PRESSLEY, DAVID A. PRESSLEY, MICHAEL F. PRESSLEY,
THOMAS C. PRESSLEY, YASEMIN B. PRESSLEY, FRANK B. PRESSLEY,
JR., MONTINE BOWEN, SERPI BUYUK, SUNDUS BUYUK, TULAY
BUYUK, BAHAR BUYUK, FRANK PRESSLEY, SR. JOHN B. PRESSLEY,
MARC Y. PRESSLEY, DOROTHY WILLARD, CHERYL L. BLOOD,
TABITHA CARTER, ALEXANDRA RAIN COMIER, ANDREW JOHN
WILLIAM COMIER, ANDREW JOHN WILLIAM COMIER, MICHAEL
JAMES CORMIER, PATRICIA K. FAST, PATRICIA FEORE, LORIE GULIK,
ALICE M. HIRM, CLYDE M. HIRN, INEZ P. HIRN, JULITA A. QUALICO,
JOYCE REED, WHORLEY LEE REED, HOWARD SPARKS, HOWARD
SPARKS JR., LESLIE LYDIA SPARKS, MICHAEL RAY SPARKS, GARY O.
SPIERS, VICTORIA Q. SPIERS, VICTORIA J. SPIERS, FLOSSIE VARNEY,
LINDA JANE WHITESIDE, RITH ANN WHITESIDE, PAT WILLIAMS,
NOAM ROSENMAN, ELENA ROZENMAN, TZVI ROZENMAN, BENNIE
HARRIS, ESTATE OF BINYAMIM KAHANE, ESTATE OF IRMA
FRANKLIN, ESTATE OF MEIR KAHANE, KEITH ESTLER, ETHEL J.
GRIFFIN, SONIA KAHANE, RONALS WALKER JR. JAMES S. SPEARS,
MARK, SPEARS, ESTATE OF MOSES ARNOLD, JR., LOLITA M. ARNOLD,
ESTATE OF DAVID L. BATTLE, LISA ANN BECK, BETTY J. BOLEN,
KEITH EDWIN BOLEN, NEALE SCOTT BOLEN, SHELDON H. BOLEN,
SHARLA M. KORZ, ESTATE OF LEONARD WARREN WALKER, ESTATE
OF WALTER EMERSON WINT, JR. JEAN GIVEN OWEN, DONTE AKILI
MWAIPAPE, ELISHA DONTI MWAIPAPE, NKO DONTI MWAIPAPE,
VICTORIA DONTI MWAIPAPE, DONALD BLANKENSHIP, JR., JOHN W.
BLOCKER, JAMES BOCCIA, BILLIE JEAN BOLINGER, CHARLITA
MARTIN COVINGTON, DEBORAH CRAWFORS, AMANDA CROUCH,
MARIE CRUDALE, RICK CRUDALE, EUGENE F. CYZICK, RUSSELL
CYZICK, LYNN DALLACHIE, BARBARA DAVIS, ANN DEAL, LYNN
SMITH DERBYSHIRE, DESJARDINS, CHRISTINE DEVLIN, DANIEL
DEVLIN, GABRIELLE DEVLIN, MICHAEL DEVLIN, RICHARD DEVLIN,
SEAN DEVLIN, GLENN DOLPHIN, ROSALIE MILANO DONAHUE,
ASHLEY DORAY, NATHANIEL DORSEY, REBECCA DOSS, CLAUDINE
DUNNIGAN, ELIZABETH ANN DUNNIGAN, RICHARD W. WOOD,
ESTATE OF BRENT MARTHALER, MARIE R. CAMPBELL, ELIZABETH

ADAMS, CHRISTOPHER R. NGUYEN, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF THANH GUS
NGUYEN,

       Third-Party-Defendants-Counter-Claimants-Cross-Defendants-Cross-
Claimants,

DEBORAH PETERSON, PERSONAL REPRESENTATIVE OF THE ESTATE
OF JAMES C. KNIPPLE, ET AL.

       Third-Party-Defendant-Counter-Claimant.

# **TABLE OF CONTENTS**

Table of Authorities ............................................................... iii

ARGUMENT .........................................................................1

I.      THE DISTRICT COURT, LED INTO ERROR BY JPMorgan,
        MISTAKENLY HELD THAT THE FEDERAL COURTS DO NOT HAVE
        SUBJECT MATTER JURISDICTION OVER ASSETS BLOCKED BY
        APPLICATION OF UNITED STATES LAW TO FOREIGN BRANCHES
        OF UNITED STATES BANKS, SO THAT VICTIMS OF STATE
        SPONSORED TERRORISM CANnot EXECUTE ON THEM UNDER
        THE TERRORIST RISK INSURANCE ACT ("TRIA")..............................1

A.      What Is Not at Issue..........................................................1

B.      TRIA's Language Provides That Blocked Assets of a Terrorist State,
        Including Its Agencies and Instrumentalities, Which Are Blocked by United
        States Law and Held in Foreign Branches of United States Banks, Are
        Available for Execution to Satisfy Judgements of Victims of State Sponsors
        of Terrorism Without Language Limiting Assets to Those Found in the
        United States as in Other FSIA Sections.........................................5

1.      Express Language of TRIA, a Subsection of the FSIA, Is Not Limited by
        Reference "to the United States" as Is the Express Language of Other
        Sections of the FSIA..........................................................5

2.      TRIA Is Not Silent on Extraterritoriality and Defines Blocked Assets as "Any Asset Seized or Frozen by the United States Under Section 5(b) of The Trading with the Enemy Act (50 U.S.C. App. 5(b)) ("TWEA") Or Under Sections 202 and 203 of The International Emergency Economic Powers Act ("IEEPA") .......................................................................................10

3.      Any Presumption Against Extraterritoriality Is Superseded by TRIA's Express "Notwithstanding" Language ........................................................16

4.      TRIA's Legislative History Does Not Support the Limitation JPMorgan Seeks to Impose ............................................................................................17

II.    Principles of International Comity Cannot Prevent Collection of a Judgment Under TRIA from the Assets of a State Sponsor of Terrorism Blocked in a Foreign Branch of a New York Bank Under the Jurisdiction of the New York Court ...............................................................................................19

III.   *KOHLER* IS CONSISTENT WITH TRIA'S EXTRATERRITORIAL REACH .......................................................................................................24

CONCLUSION .......................................................................................................25

Certificate of Compliance ......................................................................................26

ii

# TABLE OF AUTHORITIES

## Cases

*Agudas Chasidei Chabad of U.S. v. Russian Federation*,

528 F.3d 934 (D.C. Cir. 2008) ...............................................................23

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,

994 F.2d 996 (2d Cir. 1993)...................................................................22

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,

499 F.3d 737 (7th Cir. 2007)..................................................................10

*Belgrade v. Sidex Int'l Furniture Corp.*,

2 F. Supp. 2d 407 (S.D.N.Y. 1998).......................................................22

*Bennett v. Islamic Republic of Iran*,

825 F.3d 949 (9th Cir. 2016).......................................................... 2, 16

*Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*,

919 F. Supp. 2d 411 (S.D.N.Y. 2013)...................................................12

*GMA Accessories, Inc. v. BOP, LLC*,

765 F. Supp. 2d 457 (S.D.N.Y. 2011)...................................................14

*Hartford Fire Ins. Co. v. California*,

509 U.S. 764 (1993) ...............................................................................23

*Hausler v. JPMorgan Chase Bank, N.A.*,

845 F. Supp. 2d 553 (S.D.N.Y. 2012)...................................................12

*Hausler v. JPMorgan Chase Bank, N.A.*,

    845 F. Supp. 2d 553 (S.D.N.Y. 2012)....................................................19

*Hegna v. Islamic Republic of Iran*,

    380 F.3d 1000 (7th Cir. 2004)..............................................................9

*Herbstein v. Bruetman*,

    743 F. Supp. 184 (S.D.N.Y. 1990)........................................................22

*In re 650 Fifth Ave.*,

    08 CIV. 10934 KBF, 2013 WL 2451067 (S.D.N.Y. June 6, 2013)....................13

*In re 650 Fifth Ave.*,

    No. 08 CIV. 10934 KBF, 2013 WL 5178677 (S.D.N.Y. Sept. 16, 2013).............2

*In re Feit & Drexler, Inc.*,

    760 F.2d 406 (2d Cir. 1985)................................................................24

*Levin v. Bank of New York*,

    09 CV 5900 RPP, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) ..........................13

*Levin v. Islamic Republic of Iran*,

    No. 05-cv-2494, 2007 WL 9759002 (D.D.C. Dec. 31, 2007) ...........................21

*Maalouf v. Islamic Republic of Iran*,

    923 F.3d 1095 (D.C. Cir. 2019) ..........................................................21

*Moreno-Bravo v. Gonzales*,

    463 F.3d 253 (2d Cir. 2006)................................................................6

iv

*Morrison v. Nat'l Australia Bank Ltd.*,

561 U.S. 247 (2010) ........................................................................... 15, 20

*Peterson v. Islamic Republic of Iran*,

876 F.3d 63 (2d Cir. 2017) ................................................................. 9

*Republic of Argentina v. NML Capital, Ltd.*,

573 U.S. 134 (2014) ............................................................................ 17

*Rodriguez v. Pan Am. Health Org.*,

502 F. Supp. 3d 200 (D.D.C. 2020) ................................................. 23

*Rubin v. Islamic Republic of Iran*,

138 S. Ct. 816 (2018) ................................................................. passim

*Rubin v. Islamic Republic of Iran*,

No. 03-c-9370, 2007 WL 1169701 (N.D. Ill. Apr. 17, 2007) ............... 9

*Russello v. United States*,

464 U.S. 16 (1983) ............................................................................. 6

*Smith ex rel. Est. of Smith v. Fed. Rsrv. Bank of New York*,

346 F.3d 264 (2d Cir. 2003) ............................................................. 19

*Smith v. Fed. Rsrv. Bank of New York*,

280 F. Supp. 2d 314 (S.D.N.Y.) ...................................................... 16

*Stansell v. Revolutionary Armed Forces of Colombia*,

45 F.4th 1340 (11th Cir. 2022) ......................................................... 9

*United States v. Alavi Found. (In re 650 Fifth Ave. & Related Props.)*,

    830 F.3d 66 (2d Cir. 2016) ...................................................................13

*United States v. First Nat'l City Bank*,

    379 U.S. 378 (1965) ...........................................................................24

*United States v. Gonzales*,

    520 U.S. 1 (1997) ...............................................................................10

*Weininger v. Castro*,

    462 F. Supp. 2d 457 (S.D.N.Y. 2006) ....................................................4

*Weinstein v. Islamic Republic of Iran*,

    609 F.3d 43 (2d Cir. 2010) ...............................................................1, 2

*Zuri-Invest AG v. Natwest Finance Inc.*,

    177 F. Supp. 2d 189 (S.D.N.Y. 2001) ...................................................25


**<u>Statutes</u>**

31 C.F.R. Part 544.301 ............................................................................15

31 C.F.R. Part 544.311 ............................................................................15

Sanctioning the Use of Civilians as Defenseless Shields Act,

    Pub. L. No. 115-348, 132 Stat. 5055, § 3(d)(1) .....................................15

Terrorism Risk Insurance Extension Act of 2005,

    Pub. L. 109-144, 119 Stat. 2660 ...........................................................14

vi

Terrorism Risk Insurance Program Reauthorization Act of 2019,

Pub. L. 116-94, 133 Stat. 2534...............................................................14

## **Other Authorities**

H.R. Conf. Rep. 107-779 (2002),

2002 U.S.C.C.A.N. 1430, 1434..................................................... 18, 19

**ARGUMENT**

I. **THE DISTRICT COURT, LED INTO ERROR BY JPMORGAN, MISTAKENLY HELD THAT THE FEDERAL COURTS DO NOT HAVE SUBJECT MATTER JURISDICTION OVER ASSETS BLOCKED BY APPLICATION OF UNITED STATES LAW TO FOREIGN BRANCHES OF UNITED STATES BANKS, SO THAT VICTIMS OF STATE SPONSORED TERRORISM CANNOT EXECUTE ON THEM UNDER THE TERRORIST RISK INSURANCE ACT ("TRIA")**

A. **What Is Not at Issue[1]**

The district court and this Court have personal jurisdiction over both defendants, JPMorgan Chase Bank, N.A. ("JPMorgan US") and its London branch, JPMorgan Chase Bank, N.A./London, ("JPMorgan London") (collectively "JPMorgan"). Dkt. 61 at 22. The district court and this Court have subject matter jurisdiction over collection actions under TRIA. *Id.*; *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) ("TRIA provides courts with subject matter jurisdiction over post-judgment execution…"). This Court has jurisdiction over Bank Melli. Dkt. 61 at 22. Further, it is not disputed that the assets in question are "blocked" under implementing regulations of the Office of Foreign Asset Control

---

[1] JPMorgan states that the Levins did not have a separate heading for the issue presented here. Dkt. 61 at 17. This was an inadvertent mistake in the final draft for which counsel apologizes. The issue is set out in the Levins' Opening Brief under the "Argument" section. Dkt. 37 at 24. JPMorgan does not claim that it did not understand the issue that the district court based its Order on or that it was not able to respond to the opening brief because there was no separate heading. *See generally* Dkt. 61 at 17-18.

1

("OFAC"). Dkt. 61 at 19 ("The … 'Melli Blocked Account,' is a deposit account blocked in 2010 under sanctions administered by … OFAC and applicable to … Iran.").[2] Additionally, Bank Melli is an agency and instrumentality of the Islamic Republic of Iran ("Iran") and is, and has been, itself a Specially Designated National ("SDN"). *Weinstein*, 609 F.3d at 48 ("Bank Melli concedes that it is an instrumentality of Iran.").[3] Bank Melli owns the blocked assets. Dkt. 61 at 19

---

[2] *Weinstein*, 609 F.3d at 46-47 ("Bank Melli had been designated by …[OFAC] as a 'proliferat[or] of weapons of mass destruction,' and its assets had been frozen. *See* Executive Order 13,382, 70 Fed.Reg. 38,567 (June 28, 2005); *Id.* at 47 n.1 … Bank Melli was added to the [SDN] list on October 25, 2007."); JPMorgan also states that "[t]he Melli Blocked Account is held in London and is a deposit account blocked … under the Weapons of Mass Destruction Proliferators Sanctions Regulations, 31 C.F.R. Part 544, administered by OFAC…" Dkt 61 at 23.

[3] This Court is very familiar with the history of Bank Melli and its involvement in acts and sponsorship of terrorism against United States citizens, as well as the sanctions placed on Bank Melli under OFAC regulations long before TRIA was enacted in 2002, as JPMorgan acknowledges. *See, e.g.*, *In re 650 Fifth Ave.*, No. 08 CIV. 10934 KBF, 2013 WL 5178677, at *12 (S.D.N.Y. Sept. 16, 2013), *vacated and remanded sub nom. In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66 (2d Cir. 2016), *and aff'd in part, vacated in part, remanded sub nom. U.S. v. Assa Co. Ltd.*, 934 F.3d 185 (2d Cir. 2019) ("On June 1, 1995, the President … determined Bank Melli to be 'owned or controlled by … Iran.' … See Implementation of Exec. Order No. 12959 With Respect to Iran, 60 Fed. Reg. 40881 (Aug. 10, 1995) … Bank Melli was designated by … [OFAC] pursuant to Executive Order 13,382, … … See *Additional Designation of Entities Pursuant to Executive Order 13382*, 72 Fed. Reg. 62520, (Nov. 5, 2007), *available at* 2007 WL 3235014."); *see also* U.S. Department of Treasury, Press Release, U.S. Government Fully Re-Imposes Sanctions on the Iranian Regime As Part of Unprecedented U.S. Economic Pressure Campaign (Nov. 5, 2018), https://home.treasury.gov/news/press-releases/sm541 (last visited October 17, 2022); Dkt. 61 at 23-24; *see also Bennett v. Islamic Republic of Iran*, 825 F.3d 949, 957 (9th Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).

("[T]he funds in the Melli Blocked Account appear to be Bank Melli's property."). The Levins also agree with the district court and JPMorgan that under the reasoning of *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 ,827 (2018), TRIA, but not 1610(g), provides an independent basis for subject matter jurisdiction over any property of a foreign state or its agency. TRIA and 1610(g) have different language, different purposes, and different scope. *Id.* at 826 ("In enacting … TRIA, which …permits attachment and execution against blocked assets, Congress signaled that it was rescinding immunity by permitting attachment and execution '[n]otwithstanding any other provision of law.' …. Had Congress likewise intended § 1610(g) to have such an effect, it knew how to say so. Cf. *Bank Markazi v. Peterson,* 578 U.S. ——, ——, n. 2, 136 S.Ct. 1310, 1318, n. 2, 194 L.Ed.2d 463 (2016) (noting that '[s]ection 1610(g) does not take precedence over "any other provision of law, as the TRIA does."')").")

None of the cases cited by JPMorgan, which deal with other sections of the Foreign Sovereign Immunities Act ("FSIA"), and which have language different from TRIA, are authority for the scope of blocked assets under TRIA or for the power of the federal courts to reach extraterritorially blocked assets under TRIA in light of its expressly different language and Congressional purpose to deal with terrorism, not commercial activity. *Rubin*, 138 S. Ct. at 825 ("This focus of the FSIA is reflected within § 1610, as subsections (a), (b), and (d) all outline

3

exceptions to immunity of property when that property is used for *commercial* activity. The Court's reading of § 1610(g) means that individuals with § 1605A judgments … must primarily invoke other provisions revoking the grant of immunity for property related to commercial activity, including § 1610(a)(7), *unless the property is expressly carved out in an exception that applies '[n]otwithstanding any other provision of law,' § 1610(f)(1)(A); § 201(a) of the TRIA.* That result is consistent with the history and structure of the FSIA.") (Emphasis added).

The only issue before the Court is whether under TRIA the federal courts of the United States have subject matter jurisdiction over assets of an agency and instrumentality of a designated terrorist state, which the executive branch, without question, has the power to block and has blocked, in a foreign branch of a United States bank, and the power to order the foreign branch to transmit the blocked assets to its New York home bank.[4] The district court erred in holding that TRIA, which includes "notwithstanding" language and references statutes and executive orders that authorize OFAC implementing regulations, in contrast to any other

---

[4] JPMorgan repeatedly claims it is a disinterested neutral party. Dkt. 61 at 21. This is not the case. *Weininger v. Castro*, 462 F. Supp. 2d 457, 502 (S.D.N.Y. 2006) ("The Court notes, however, that JPMorgan Chase's litigation strategy, to the extent that it advocated a position against Plaintiffs, went beyond that of a typical disinterested stakeholder, whose legal expenses are associated merely with its efforts to secure interpleader.").

section of the FSIA, does not provide jurisdiction over such government blocked

assets due to a judicial presumption that where a statute does not expressly state it

reaches foreign assets, it must be interpreted not to apply to extraterritorial assets.

**B.** **TRIA's Language Provides That Blocked Assets of a Terrorist State, Including Its Agencies and Instrumentalities, Which Are Blocked by United States Law and Held in Foreign Branches of United States Banks, Are Available for Execution to Satisfy Judgements of Victims of State Sponsors of Terrorism Without Language Limiting Assets to Those Found in the United States as in Other FSIA Sections**

**1.** **Express Language of TRIA, a Subsection of the FSIA, Is Not Limited by Reference "to the United States" as Is the Express Language of Other Sections of the FSIA**

The district court acknowledged that TRIA, unlike other sections of FSIA,

does not contain language limiting the scope of TRIA to only property in the

United States.  Special Appendix ("SPA") 5.  ("Unlike most of FSIA § 1610's

provisions, which explicitly strip immunity from kinds of property 'in the United

States,' *see* … § 1610, TRIA … strips immunity from blocked assets without

reference to whether the assets must be in the United States.").  JPMorgan, as it

must, admits the difference in language within TRIA but states the district court

was correct to hold that this has no significance because: "while TRIA … do[es]

not include that same language, that omission, as the District Court reaffirmed, is

no sign that Congress intended those statutes to apply extraterritorially."  Dkt. 61 at

33.

5

As this Court has affirmed, even in cases not involving international terrorists and specifically blocked assets, it is a basic tenet of statutory interpretation that where language is used in one section of an act but not in another, the language which is omitted cannot be implied into the section without that language. *Moreno-Bravo v. Gonzales*, 463 F.3d 253, 261-62 (2d Cir. 2006) ("'[W]here Congress includes particular language in one section of a statute but omits it in another' we should refrain from reading into the statute a phrase that Congress has left out of the latter section.") (internal citations omitted). In *Russello*, a RICO case, the Supreme Court stated:

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States* v. *Wong Kim Bo*, 472 F.2d 720, 722 (CA5 1972). Had Congress intended to restrict § 1963(a)(1) …, it presumably would have done so expressly as it did in the immediately following subsection (a)(2) … 'The short answer is that Congress did not write the statute that way.' We refrain from concluding here that the differing language in the two subsections has the same meaning in each.

*Russello v. United States*, 464 U.S. 16, 23 (1983) (internal citations omitted).

In *Rubin*, the Supreme Court discussed the statutory interpretation of TRIA, where FSIA sections other than TRIA have different language. *Rubin*, 138 S. Ct. at 824. And the Supreme Court paid special attention to the fact that TRIA, unlike other sections of the FSIA, does not only deal with commercial property. The

6

language of TRIA, in contrast to FSIA § 1610(a), which deals with "[t]he property in the United States of a foreign state," § 1610(b), which applies to "any property in the United States of an agency or instrumentality of a foreign state", and § 1610(d), which applies to "[t]he property of a foreign state … used for a commercial activity in the United States," deals with terrorist judgments, and in particular, blocked assets of terrorists. As the Court noted: "[t]hroughout the FSIA, special avenues of relief to victims of terrorism exist, even absent a nexus to commercial activity … *See* §§ 1605A, 1610(a)(7), (b)(3), (f)(1)(A); § 201(a) of the TRIA." *Rubin*, 138 S. Ct. at 825.

In contradiction to the teaching of the Supreme Court in *Rubin* regarding statutory construction of TRIA, JPMorgan string cites a laundry list of cases, none of which deal with TRIA but only with other laws or different sections of the FSIA, which are not authority that the particular and different language of TRIA should be interpreted in the same way.[5] Particularly after *Rubin* was decided, it is clear that differences in the language of the various sections of FSIA, including TRIA, are critical to proper interpretation. *See* Dkt. 37 at 32-34; *Rubin*, 138 S. Ct.

---

[5] *See* Dkt. 61 at 36-41 and cases cited therein – none deal with TRIA and assets in foreign branches of U.S. banks.

at 825.  But JPMorgan does not deal with the substance of *Rubin* as to TRIA, and

neither did the district court in discussing its holding.[6]

JPMorgan even goes so far as to state with regard to TRIA cases outside the

Second Circuit:

> As to TRIA …, at least three federal courts have stated that it
> lacks extraterritorial reach and therefore applies only to blocked
> assets held within the U.S. *See Stansell v. Revolutionary Armed
> Forces of Colombia*, 45 F.4th 1340, 1354 (11th Cir. 2022) …;
> *Hegna*, 380 F.3d at 1002 …; *Rubin v. Islamic Republic of Iran*,
> No. 03 Civ. 9370, 2007 WL 1169701, at *2 (N.D. Ill. Apr. 17,
> 2007)….”

Dkt. 61 at 38.

None of these cases so hold.  *Stansell* deals with the timing issue of defining

“agencies and instrumentalities” under TRIA, and it does not state or consider

---

[6] *See* SPA 4-6.  JPMorgan has only one citation to the Supreme Court decision in
*Rubin*.  JPMorgan’s only answer to the impact of *Rubin* on interpretation of TRIA
is to claim that the Levins waived discussion of the “notwithstanding” language of
TRIA, as set forth in *Rubin*.  Dkt. 61 at 43 (“Because Plaintiffs never made that
argument [regarding the notwithstanding language of TRIA] before the District
Court, they cannot properly advance it now for the first time on this appeal.”).  In
the context of TRIA, this Court has rejected waiver arguments involving statutory
interpretation, including constitutional challenges.  *Weinstein v. Islamic Republic
of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) (“a claim that a legislative enactment
intrudes on the courts’ powers is the kind of claim that appropriately may be
considered here, even if for the first time.”)  Here, the Levins did refer to, in the
district court in its opposition brief, the notwithstanding language, case law, and
various differences in the language of TRIA and other FSIA sections, and TRIA’s
“notwithstanding” language is mentioned five times in the Levins’ supplemental
letter requested by the district court.  Joint Appendix (“JA”) 699-703.  There was
no waiver.

whether OFAC "blocked assets" covered by TRIA include OFAC blocked assets in foreign branches of U.S. banks. *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1354 (11th Cir. 2022). *Hegna* did not address the definition of blocked assets under TRIA or whether it includes those blocked in foreign branches but deals with artifacts in Chicago. *Hegna v. Islamic Republic of Iran*, 380 F.3d 1000, 1003 n.2 & 1005-6 (7th Cir. 2004). The *Rubin* Northern District of Illinois case only involved assets in the United States and had to do with discovery which the court allowed. *Rubin v. Islamic Republic of Iran*, No. 03-c-9370, 2007 WL 1169701, at *1 (N.D. Ill. Apr. 17, 2007). There is no case from any jurisdiction that has held or implied that the blocked assets referred to under TRIA do not include assets blocked by OFAC regulations in the foreign branch of a U.S. bank.[7] And *Autotech Techs*, which JPMorgan cites, supports extraterritorial reach here, for where there is "'statutory language, context, history, or purpose'

---

[7] This Court previously held, in the only case presenting the same issue that is raised here, that TRIA and New York state law allows execution against blocked assets held in foreign branches of a U.S. bank. *See Peterson v. Islamic Republic of Iran*, 876 F.3d 63 (2d Cir. 2017), *cert. granted, judgment vacated sub nom. Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020). The Second Circuit certified the issue of jurisdiction of assets held in foreign branches to the Court of Appeal of New York in *Kohler v. Bank of Bermuda Ltd.*, 577 F.3d 497 (2d Cir. 2009). In *Peterson*, this court applied *Kohler* in the TRIA context, finding jurisdiction over assets abroad. *Peterson v. Islamic Republic of Iran*, 963 F.3d 192, 196 (2d Cir. 2020). This Court later vacated the opinion after the Supreme Court found in favor of jurisdiction on different grounds. *Id*. *Peterson* was not disapproved by this Court but remains persuasive authority for the reasons set out in the Levins' Opening Brief. *See* Dkt. 37 at 35-37.

indicating that Congress was legislating with the world in mind," then the statutory

provision will have such an effect notwithstanding the presumption against

extraterritoriality. *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499

F.3d 737, 750-51 (7th Cir. 2007).

JPMorgan also states in a footnote attempting to distinguish *United States v.*

*Gonzales*, 520 U.S. 1, 5 (1997): "As to TRIA …, the general principle [of

interpretation] cited by Plaintiffs does not apply because there are no other

provisions within TRIA to which § 201(a) can be compared…" Dkt. 61 at 33 n.7.

With regard to TRIA, it is part of the FSIA, and it is other sections of the FSIA to

which it is to be compared. *Supra* at 4-5; Dkt. 37 at 25-26; *Rubin*, 138 S. Ct. at

825. JPMorgan cites no on point authority to the contrary.

> **2.** **TRIA Is Not Silent on Extraterritoriality and Defines Blocked Assets as "Any Asset Seized or Frozen by the United States Under Section 5(b) of The Trading with the Enemy Act (50 U.S.C. App. 5(b)) ("TWEA") Or Under Sections 202 and 203 of The International Emergency Economic Powers Act ("IEEPA")**

JPMorgan argues that the district court was correct in holding that TRIA

does not provide subject matter jurisdiction over blocked assets of a terrorist

judgment debtor held in an account in a foreign branch of a U.S. bank, blocked by

U.S. regulations, because "[n]either the FSIA nor TRIA provides any such

Congressional 'hint.'" Dkt. 61 at 33. JPMorgan cites *Kiobel v. Royal Dutch*

*Petroleum Co.*, 569 U.S. 108, 115 (2013), which again is not a TRIA case but an

10

Alien Tort Act case, and it does not deal with blocked assets nor address a statute with "notwithstanding" language. In any event, TRIA is not "silent" as to Congressional intent for extraterritorial reach on collection of judgments by victims of terrorism involving OFAC blocked assets.

First, unlike any other section of the FSIA, TRIA limits its scope to only blocked assets of a designated terrorist party.[8] The fact that TRIA references such specific property on which execution can be based is another reason it must be interpreted differently than the sections of the FSIA which deal generally with property (not blocked assets) in the United States. *Supra* at 4-5; Dkt. 37 at 32-34; *Rubin*, 138 S. Ct. at 825.

Additionally, TRIA § 201(d)(2)(A), which was part of TRIA as originally passed in 2002, provides that "blocked assets" include "any asset seized or frozen by the United States under … [TWEA] [now 50 U.S.C. 4305(b)] … or under … [IEEPA]…" Both TWEA and IEEPA provide the authority for the President to issue executive orders blocking foreign property, and for OFAC to promulgate implementing regulations.

---

[8] JPMorgan also references a Statement of Interest filed in 2012 in *Agudas Chasidie Chabad of the United States v. Russian Federation*, Case No. 1:05-cv-01548 (RCL). JA 108; *see generally* JA 103-116. However, the Statement specifically cites FSIA § 1610(a), which concerns property used for a commercial activity and includes "in the United States" language (where TRIA does not); the quote makes no reference to any other section of FSIA, including TRIA. JA 108.

[TWEA], which the TRIA cites directly, permits the executive not only to "temporarily freeze assets," but also to "direct and compel" the "transfer… of ... any property in which any foreign country has any interest…" *See also Smith ex rel. Estate of Smith,* 346 F.3d at 271…

[T]he … [IEEPA] (and the TWEA before it) provided the President with the discretion to confiscate assets blocked pursuant to OFAC regulations. … This was true before the passage of the TRIA; it is still true.

*Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 575, 578

(S.D.N.Y. 2012), *rev'd on different grounds and remanded sub nom.*

*Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014); *see*

*also Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*,

919 F. Supp. 2d 411, 418 (S.D.N.Y. 2013) ("OFAC describes itself as

'act[ing] under Presidential national emergency powers, as well as

authority granted by specific legislation, to impose controls on transactions

and freeze assets under U.S. jurisdiction.'").

And another court stated:

Transactions involving Iranian assets arc blocked pursuant to a series of regulations, including 31 C.F.R. § 535, 544, 560, 594-597. 31 C.F.R. § 544, underlies the scheme governing Weapons of Mass Destruction ("WMD") Proliferators Sanctions, and serves to effectuate Executive Order 13382, which freezes assets of proliferators.

Under 31 C.F.R. § 544.201, "all property and interests in property … that are or hereafter come within the possession or control of U.S. persons, including their overseas branches … are blocked." The regulation then goes on to explain that any entity engaged in the proliferation of weapons of mass destruction is

included in the list of "persons" whose property interests are
blocked….

*Levin v. Bank of New York*, 09 CV 5900 RPP, 2011 WL 812032, at *17 (S.D.N.Y.

Mar. 4, 2011).

And yet, another court dealing with blocked assets and TRIA stated:

[T]he blocking determinations in both the OFAC-SDN context
and in TRIA § 201(a) have the same statutory source – IEEPA.
OFAC's blocking determinations [in respect of the blocked assets
in question here] are made pursuant to E.O. 13382, which permits
the President or his designee to block assets for purposes of
IEEPA. Likewise, TRIA defines a "blocked asset" as "any asset
seized or frozen by the United States under … [IEEPA]." TRIA
§ 201(d)(2)(A).

*In re 650 Fifth Ave.*, 08 CIV. 10934 KBF, 2013 WL 2451067, at *4 (S.D.N.Y.

June 6, 2013); *see also United States v. Alavi Found. (In re 650 Fifth Ave. &*

*Related Props.)*, 830 F.3d 66, 80 (2d Cir. 2016) ("In March 1995—six years after

650 Fifth Ave. Co.'s formation—President Clinton issued a series of Executive

Orders pursuant to … [IEEPA], formally declaring the Government of Iran a threat

to national security and imposing broad financial sanctions."). JPMorgan admits

that the Melli Account is blocked by application of OFAC sanctions regulations.

Dkt 61 at 19.

JPMorgan, without any citation to authority, criticizes the Levins for

referencing IEEPA and the current implementing OFAC regulations which

include blocking Iran's property held in foreign branches of U.S. banks. Dkt 61

at 50.  JPMorgan, again without authority, states: "What property is and is not subject to execution under TRIA § 201(a) is a separate legal issue whose answer is informed by the statutory language, legislative history and caselaw cited above, not by the scope of assets that the executive branch is required to block under a statute enacted years after TRIA was already in effect."  *Id*.

TRIA is a statute which, while passed initially in 2002, requires reauthorization, and it has been amended a number of times.  *See, e.g.*, the Terrorism Risk Insurance Extension Act of 2005, Pub. L. 109-144, 119 Stat. 2660 [TRIEA 2005] (TRIEA extended TRIA through December 31, 2007).

TRIA was reauthorized on December 20, 2019.  Terrorism Risk Insurance Program Reauthorization Act of 2019, Pub. L. 116-94, 133 Stat. 2534 [2019 Reauthorization Act] (extending TRIA through December 31, 2027).  Congress is presumed to know existing law at the time of reauthorization or amendment. *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 470 (S.D.N.Y. 2011) ("Congress is assumed to pass or amend legislation 'with full knowledge of the existing legal landscape.' *In re Northwest Airlines Corp.*, 483 F.3d 160, 169 (2d Cir. 2007) (citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 … (1990)).").  Therefore, the definitions of extraterritorial blocking of assets in foreign banks utilizing the President's powers granted under the IEEPA is relevant to the context of TRIA's scope.  *See* Sanctioning the Use of Civilians as Defenseless

Shields Act, Pub. L. No. 115-348, 132 Stat. 5055, § 3(d)(1).

Additionally, 31 C.F.R. 544, in effect as of 2005, before the Melli account was blocked and at the time of Congressional reauthorization of TRIA, defines blocked property and financial institutions to include the overseas branches of U.S. banks:

> **§ 544.301 Blocked account; blocked property.**
> The terms blocked account and blocked property shall mean any account or property subject to the prohibitions in § 544.201 held in the name of a person whose property and interests in property are blocked pursuant to § 544.201(a)….
>
> **§ 544.311 U.S. financial institution.**
> The term U.S. financial institution means any U.S. entity *(including its foreign branches)* that is engaged in the business of accepting deposits…

31 C.F.R. Part 544.301 & 544.311 (emphasis added).

It cannot be credibly argued that, when TRIA was passed, Congress did not intend, much less gave no "hint," that it reach blocked assets of terrorists held in the foreign branches of U.S. banks, when the implementing OFAC regulations authorized by the legislation cited in TRIA's definition of blocked assets specifically include such foreign branches. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010) ("But we do not say … that the presumption against extraterritoriality is a 'clear statement rule,' *ibid.*, if by that is meant a requirement that a statute say 'this law applies abroad.' Assuredly context can be consulted as well.").

### 3. Any Presumption Against Extraterritoriality Is Superseded by TRIA's Express "Notwithstanding" Language

Another aspect of TRIA which JPMorgan does not deal with substantively is

the "notwithstanding" clause of TRIA and the *Smith* case, cited by the Levins in

their Opposition to the Motion to Dismiss, which stated:

> Although the "notwithstanding" language Congress used in the
> TRIA was broad, it necessarily has a scope and that scope
> depends on the substance of the provision to which it is attached.
> The substance of Section 201(a) is that "the blocked assets of that
> terrorist party ... shall be subject to execution or attachment" to
> pay the terrorist party's liability for compensatory damages. The
> phrase "notwithstanding any other provision of law" simply
> means that Section 201(a) controls if there is another provision of
> law that conflicts with it. … [T]o the extent that a foreign
> country's sovereign immunity potentially conflicts with Section
> 201(a), the "notwithstanding" phrase removes the potential
> conflict.

*Smith v. Fed. Rsrv. Bank of New York*, 280 F. Supp. 2d 314, 319 (S.D.N.Y.),

*aff'd*, 75 F. App'x 860 (2d Cir. 2003), and *aff'd sub nom. Smith ex rel. Est. of*

*Smith v. Fed. Rsrv. Bank of New York*, 346 F.3d 264 (2d Cir. 2003); *see also*

*Levin v. Bank of New York et al.*, No. 09-cv-5900, Dkt. 1374 at 18 (S.D.N.Y.).

Notwithstanding language overcomes legal presumptions. *See, e.g.*, *Bennett*

*v. Islamic Republic of Iran*, 825 F.3d 949, 958 (9th Cir. 2016), *abrogated on*

*other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018)

(finding that the so-called "*Bancec* presumption" … did not apply to TRIA,

partly because of the "[n]otwithstanding" language of that provision). And

16

the Supreme Court has emphasized in respect of FSIA that "any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 141-42 (2014).

JPMorgan argues that the "notwithstanding" clause contained in TRIA does not overcome a presumption against extraterritoriality because no "conflict exists between any provision of TRIA § 201(a) and the presumption against extraterritoriality." Dkt. 61 at 45. JPMorgan's circular reasoning assumes its conclusion, namely that Congress did not intend for TRIA to provide federal courts with subject matter jurisdiction over blocked assets of terrorists in foreign branches of U.S. banks. Since the context and language of TRIA includes statutes, executive orders, and OFAC regulations defining blocked assets as including those in foreign bank branches of U.S. banks, there is a conflict with any presumption against extraterritoriality. Congress did intend for TRIA to have limited and particular extraterritorial reach, and a judicial presumption may not overcome such an intent. *See supra* at 8-13.

### 4. TRIA's Legislative History Does Not Support the Limitation JPMorgan Seeks to Impose

JPMorgan argues that TRIA's legislative history reinforces its argument that TRIA was not intended to have extraterritorial effect. In support of that proposition, JPMorgan cherry picks a quote from Senator Harkin made on the

Senate floor before the passage of TRIA, which JPMorgan then wholly relies upon

to represent the legislative history of TRIA.  Specifically, JPMorgan quotes

Senator Harkin as saying, "judgments are to be enforced against any assets

available in the U.S.", with JPMorgan highlighting the phrase "available in the

U.S.," which it says supports the limitation in scope that it seeks to impose.  The

Senator does not, however, say that *only* assets in the United States may be subject

to execution or attachment.  Indeed, the legislative history of TRIA does not

support a restrictive reading or concern by anyone in Congress about victims of

terrorism being able to reach blocked assets of terrorists being held in foreign

branches of U.S. banks.

> The purpose of Section 201 is to *deal comprehensively* with the
> problem of enforcement of judgments rendered on behalf of
> victims of terrorism … It is the intent of the Conferees that
> Section 201 establish that such judgments are to be enforced.
> *Section 201 …* authorizes the enforcement of judgments against
> terrorist organizations and eliminates the effect of any
> Presidential waiver …, thereby making clear that all such
> judgments are enforceable against ***any assets or property*** *under*
> *any authorities referenced in Section 1610(f)(1).*

H.R. Conf. Rep. 107-779 at 27 (2002), 2002 U.S.C.C.A.N. 1430, 1434

(emphasis added).

The House Report states that TRIA § 201 was intended to be used against

"*any* assets or property."  *Id.* (emphasis added).  The Second Circuit has held that

"the plain meaning of" the TRIA "is to give terrorist victims who actually receive

18

favorable judgments a right to execute against assets that would otherwise be blocked [exempt from execution as property of a sovereign]." *Smith ex rel. Est. of Smith v. Fed. Rsrv. Bank of New York*, 346 F.3d 264, 271 (2d Cir. 2003). The legislative history of the TRIA reinforces this plain-meaning interpretation. According to the House Report, Congress's intent was to "establish that such judgments [against terrorist states] are to be enforced ... [and] are enforceable against any assets or property" referenced by the TRIA. H.R. Conf. Rep. No. 107–779 (2002), 2002 U.S.C.C.A.N. 1430, 1434; *Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 569 (S.D.N.Y. 2012), *rev'd on other grounds and remanded sub nom. Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014).

On all counts, from the text of TRIA, the context of the legislation, the purpose of the legislation, and the legislative history, it is clear that TRIA was intended by Congress to reach blocked assets held in a foreign branch of a U.S. bank, and the order of the district court to the contrary must be reversed.

II. **PRINCIPLES OF INTERNATIONAL COMITY CANNOT PREVENT COLLECTION OF A JUDGMENT UNDER TRIA FROM THE ASSETS OF A STATE SPONSOR OF TERRORISM BLOCKED IN A FOREIGN BRANCH OF A NEW YORK BANK UNDER THE JURISDICTION OF THE NEW YORK COURT**

JPMorgan does not argue that if Congress intended TRIA to have extraterritorial scope over the OFAC blocked assets of a terrorist state held in

foreign branches of U.S. banks, the principle of international comity would nullify such intent. It implicitly concedes that if the language, context, and purpose of TRIA give even a "hint" that Congress intended extraterritorial reach in enacting TRIA, then comity does not apply. Dkt. 61 at 33; *see Morrison*, 561 U.S. at 265. Rather, JPMorgan argues that "[t]hose principles [comity] underscore why Congress did not draft TRIA 201(a) … so as to overcome the presumption." Dkt. 61 at 51. Since TRIA was drafted to have extraterritorial reach over all blocked assets, including those in foreign branches of U.S. banks, even under JPMorgan's analysis, comity is not an issue. *Supra* at 8-14.

JPMorgan does not explain how Executive Orders and OFAC regulations promulgated under TWEA and IEEPA, which specifically provide for the blocking of assets in foreign branches of U.S. banks, and which authority it recognizes and obeys, as it did with the Melli Assets in London, do not infringe on principles of comity, but comity somehow prevents federal courts with admitted jurisdiction over all the parties, JPMorgan London and Bank Melli included, from allowing execution under TRIA by victims of terrorism against those same assets. There is no case which supports this illogical proposition. There is no case that holds that TRIA, which also has "notwithstanding" language, is limited by a presumption of "comity," any more than the presumption of non-extraterritoriality. *Supra* at 8-13.

20

Congress has already balanced concerns of international comity in enacting

FSIA, including TRIA, and therefore international comity concerns cannot preempt

TRIA. *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1112-13 (D.C. Cir.

2019) ("[W]ith the FSIA, Congress established 'a comprehensive set of legal

standards governing claims of immunity in every civil action against a foreign state

or its …, agencies or instrumentalities.' … [T]here is no room for courts to engage

in … comity-based interest-balancing to decide 'whether and when to exercise

judicial power over foreign states,' . . . This is a concern for the political branches,

not the judiciary.").

JPMorgan cites *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013).

Dkt. 61 at 51. However, *Kiobel* deals with the Alien Tort Statute and "whether a

[federal common law] claim may reach [wrongful] *conduct* occurring in the

territory of a foreign sovereign." *Kiobel* 569 U.S. at 115 (emphasis added). In

contrast to *Kiobel*, as JPMorgan does not dispute, TRIA specifically allows

collection on blocked assets to enforce judgments already obtained under FSIA

jurisdiction based on foreign sovereign conduct occurring outside the U.S. 28

U.S.C. § 1605(a)(7) (2003); *see, e.g.*, *Levin v. Islamic Republic of Iran*, No. 05-cv-

2494, 2007 WL 9759002 (D.D.C. Dec. 31, 2007), report and recommendation

adopted, No. 05-cv-2494, 2008 WL 11493474 (D.D.C. Jan. 14, 2008); *see also*

Dkt. 61 at 22. JPMorgan cites *Belgrade v. Sidex Int'l* which does not address

21

TRIA but held that under FSIA a foreign defendant was subject to claims against it by foreign plaintiffs in federal court. *Belgrade v. Sidex Int'l Furniture Corp.*, 2 F. Supp. 2d 407, 419 (S.D.N.Y. 1998). JPMorgan also cites *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1987). Dkt. 61 at 51. *Societe* dealt with the power of the court to order discovery against foreign nationals. The Court held that there was such power under U.S. law. *Societe*, 482 U.S. at 543 n.27 ("'Comity,' in the legal sense, is neither a matter of absolute obligation … nor of mere courtesy and good will…").

Additionally, comity is not relevant here because there is no conflict between British and United States laws and no pending litigation in the U.K. over this blocked account.[9] Among other things, the rule of "comity requires that the parties and issues in both litigations [be] the same or sufficiently similar, such that the doctrine of *res judicata* can be asserted." *Herbstein v. Bruetman*, 743 F. Supp. 184, 188 (S.D.N.Y. 1990). "[S]ince comity is an affirmative defense, [the party invoking comity] carrie[s] the burden of proving that comity [is] appropriate." *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993); *see also Rodriguez v. Pan Am. Health Org.*, 502 F. Supp. 3d 200, 228 (D.D.C. 2020), *aff'd,*

---

[9] The declaration of JPMorgan's expert does not state that there is an actual conflict of law or that there is any pending case in the U.K. which would expose JPMorgan to double liability. JA 123-126. The declaration of barrister J. Perry, Q.C. refutes Ms. Tolaney's opinions. *See generally* JA 306-321.

29 F.4th 706 (D.C. Cir. 2022) ("'[a] defendant invoking the doctrine of comity must … point to a valid legal proceeding to which [this] [C]ourt must defer.'").

None of the other cases cited by JPMorgan support application of comity here. *Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984) is a case decided before TRIA was enacted in 2002. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) is a Lanham Act case. In *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 799 (1993), the Supreme Court held that there was no true conflict between U.S. and British law for purposes of international comity analysis because they "d[id] not argue that … their compliance with the laws of both countries [was] otherwise impossible…" *Glob. Tech., Inc. v. Royal Bank of Canada*, 34 Misc. 3d 1209(A), 2012 WL 89823 (N.Y. Sup. Ct. 2012) and *Shaheen Sports, Inc. v. Asia Ins. Co.*, No. 11-CV-920 LAP, 2012 WL 919664 (S.D.N.Y. Mar. 14, 2012) both involve issues arising from the state law separate entity doctrine, none involving TRIA and assets already blocked by the U.S. government, or with federal jurisdiction over the foreign branch, as here. And the Statement of Interest in *Chabad* cited by JPMorgan similarly has nothing to do with TRIA or blocked assets. *Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934 (D.C. Cir. 2008).

International comity principles are not available to allow JPMorgan to protect the blocked assets of its client Bank Melli from satisfaction under TRIA of the Levins' judgment against Iran.

## III. *KOHLER* IS CONSISTENT WITH TRIA'S EXTRATERRITORIAL REACH

JPMorgan quotes from an amicus brief filed by the Solicitor General in *Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020) (*Peterson II*). *See* Dkt. 61 at 61-62; *see also* JA at 76. However, *Peterson II* did not involve OFAC blocked assets of a SDN, where the federal court had jurisdiction over the foreign bank and the account holder. And it did not involve TRIA but FSIA §1609, which, unlike TRIA, contains "in the United States" language and does not contain "notwithstanding" language. *Supra* at 4, 13-15. The rest of JPMorgan's arguments as to *Kohler v. Bank of Bermuda Ltd.*, 577 F.3d 497 (2d Cir. 2009) and New York state law are addressed in the Levins' Opening Brief at 26-31, which discusses Supreme Court and Second Circuit authority, pre 2002 and TRIA, allowing federal courts to reach assets outside the U.S. *See* Dkt. 37 at 43-50; *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985). A proper reading of TRIA is entirely consistent with New York law and therefore, under both federal and state law, the Bank Melli blocked assets are within the subject matter jurisdiction of the federal court. *See, e.g.*, *Zuri-Invest AG v. Natwest Finance Inc.*, 177 F. Supp. 2d

189, 197 (S.D.N.Y. 2001) ("There can be no implied conflict preemption when the federal and state laws co-exist in harmony.").

## <u>CONCLUSION</u>

For all the reasons stated herein, the order of the district court must be reversed.


Dated: October 25, 2022                Respectfully Submitted,
HOWARTH & SMITH
SUZELLE M. SMITH

By:    */s/ Suzelle M. Smith*
Suzelle M. Smith (5376900)
ssmith@howarth-smith.com
523 West Sixth Street, Suite 728
Los Angeles, California 90014
(213) 955-9400

*Attorneys for Levin Appellants*

25

## Certificate of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,452 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, Version 2209, in 14-point Times New Roman font.